denies the contract as alleged by the plaintiff.   The amended complaint alleges that the defendant's net profits made by him in the business were $34,000; but the defendant, in his answer, alleges that his profits did not exceed one-fifth of that sum.   The petition then alleges that the plaintiff desires to inspect and examine the stock books, cash books, and ledgers kept by the defendant in his business from the 1st day of January, 1895, to the 1st day of February, 1896, as it is impossible for the plaintiff to prove the exact amount of profits made by the defendant in his business for the said period, except by the entries contained in the said books, that an inspection of the said books is necessary to enable the plaintiff to prepare for trial, and that the records in said books are material to a decision in this action. Upon this petition the court ordered the defendant to file with the clerk of the court the stock books, cash books, and ledgers used in his business from January 1, 1895, to February 1, 1896; and from that order this appeal is taken.

The petition does not allege the accounts in the books, as to which an inspection is sought.   There is simply a general desire expressed to examine the various books mentioned, and it is not alleged, nor does it appear, that an inspection of these books will disclose material evidence to be used upon the trial.   In the petition it is alleged that the fact sought to be proved was the amount of the defendant's profits; but to obtain evidence of that fact the proper course would be to examine the defendant before trial, upon which examination the defendant would be required to produce such books as would enable him to testify.   It is not alleged that the fact sought to be established could be proved by the mere production of the books; and, upon the allegations of this petition, it certainly would seem to be unnecessary to compel the defendant to file all the books of his business with the county clerk.

The order should therefore be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.   All concur.

---

(31 App. Div. 30.)

### KENNEDY v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. June 24, 1898.)

1. STREET RAILROADS—RIGHTS OF VEHICLES.

 The rights of drivers of vehicles and of cable cars upon a city street are reciprocal, and the gripman of a cable car is bound to use as much diligence to avoid running into a vehicle that is crossing its track as the driver of the vehicle is to avoid running into a cable car which may cross its path.

2. SAME—CROSSING TRACK.

 The driver of a vehicle in a city street has the right to cross the track of a cable car, when there is a reasonable opportunity to do so, even though it requires the cable car to slacken its speed in order that it may not upset his vehicle.

Appeal from trial term, New York county.

Action by Patrick Kennedy against the Third Avenue Railroad Company.   From a judgment entered on the verdict, and from an order denying a new trial, defendant appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

H. R. Limburger, for appellant.
M. P. O'Connor, for respondent.

VAN BRUNT, P. J. This action was brought to recover damages for personal injuries. The plaintiff was driving a wagon down Third avenue, and on attempting to cross the avenue at or near Nineteenth street, a north-bound cable car of the defendant ran into the wagon, throwing the plaintiff from the seat, and causing the injuries in question. It is urged upon this appeal that the complaint should have been dismissed upon the plaintiff's evidence, and that the verdict was grossly against the weight of evidence. It is claimed upon the part of the appellant that the plaintiff's story, as told by him, was incoherent and incredible, and that in all material points he was contradicted by six disinterested witnesses. An examination of the evidence, however, shows that upon the defendant's own testimony the verdict can be sustained. Some of the six disinterested witnesses relied upon by the defendant did not see the plaintiff when he commenced to cross the track, but only saw him when he had gotten partially across, and the car was upon him. Others of the defendant's witnesses say that he was from 15 to 20 feet from the car when he attempted to cross, and the uncontradicted evidence in the case is that the gripman could stop the car within a distance of 8 feet. It is to be observed that the gripman of this car, when speaking of the rate of speed at which the plaintiff was driving, says that he was driving at the high rate of five or six miles an hour, and that his car was going at the ordinary rate of eight miles an hour; and that even going at that moderate rate of speed, for a cable car, he could stop it in eight feet. The cable car had no absolute right to the exclusive use of the street. Pedestrians and vehicles have some rights which even cable cars are bound to respect. They have a right to cross the street, even though a cable car may be in sight. If not, then the city would be divided into as many zones as there are lines of power cars running the length of the island, and nobody could ever get across. It was not incumbent upon the driver of this vehicle to wait until no cable car was in sight before he attempted to cross. He had a right to cross the track when there was a reasonable opportunity so to do, even though it required the cable car to slacken its speed in order that it might not upset his vehicle. The rights of drivers of vehicles and of cable cars are reciprocal, and the gripman of a cable car is bound to use as much diligence to avoid running into a vehicle which is crossing its track as the driver of the vehicle is to avoid running into a cable car which may be crossing its path. It seems to be assumed upon the part of the defendant that, unless a vehicle can certainly entirely clear a cable car approaching at a high rate of speed, its driver had no right to attempt to cross, and that the car is in no case bound to slacken its speed. We know of no such rule of the road. It is evident from the de-

fendant's own testimony that the gripman had time enough to stop his car after he had seen the plaintiff attempting to cross the track, and before he collided with him. Instead of that, his car did not stop for at least 3 feet after striking the wagon, when it ought to have stopped within from 5 to 10, and perhaps 15, feet from the wagon, if reasonable diligence had been used by the gripman. The plaintiff had a right to suppose, when he went upon the track, that the gripman would give him the ordinary rights which one vehicle owes to another. Instead of that, the gripman evidently did not attempt to stop his car until he saw that a collision was inevitable, when he used all his power, but it was too late. Under these circumstances, it was a clear case to submit to the jury, and there was ample evidence of negligence upon the part of the gripman of the defendant in the management of his car.

We think, therefore, that the judgment and order should be affirmed, with costs. All concur.

