Leitner from Richards giving the particulars of the arrangement, in which he stated that he had arranged for a special train over their own line, and over the Fall Brook Coal Company's line to Watkins. Subsequently tickets were issued over the defendant's line to Niagara, and over the Fall Brook Company's line from Geneva to Watkins; these tickets, upon their face, showing that they were issued by the New York Central & Hudson River Railroad Company on account of the Fall Brook Coal Company.

Upon this state of facts, the court dismissed the complaint, upon the ground that at the time of the happening of the accident the plaintiff was being transported by the Fall Brook Company over its line, and not by the defendant. We do not see that any other conclusion could be arrived at from the evidence. It is manifest that Richards, at the request of the Mannerchor Society, secured from the Fall Brook Company their rates for the excursion. The tickets which were issued were issued by the New York Central & Hudson River Railroad Company as the agent of the Fall Brook Company. The vice president of the society, Mr. Leitner, was made aware of the fact that the transportation from Geneva to Watkins and back was to be made over the road of another company; and he, as the agent for the society, made the arrangements for transportation over that road. It was done at the request of Mr. Leitner, the agent of the society, and not on behalf of the defendant. The defendant's agent asked whether he should get those charges, or whether Leitner would get them, and Leitner asked him to obtain the rates for the society. This interpretation of the arrangement is fortified by the manner in which the tickets were issued. No ticket was issued by the defendant company in its name over the route from Geneva to Watkins. The only ticket issued by it was for and on account of the Fall Brook Company, the defendant acting as the agent of that company in the issuing of the tickets. The contract in regard to the transportation was made with the Fall Brook Company, and not with this defendant.

Such being the evidence, it is clear that there was no contract upon the part of the defendant to transport the plaintiff over the Fall Brook Company's road; and the judgment appealed from should be affirmed, with costs. All concur.

---

(39 App. Div. 497.)

### DUNICAN v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

STREET RAILROADS—INJURY ON CROSSING—QUESTION FOR JURY.

A building at the intersection of a private driveway leading from a public resort, and a street railway, obstructed the view of an approaching car. The building was only a few feet from the track. Plaintiff, who was proceeding along the driveway at night, without listening for a car, went upon the crossing and was struck. The car was running at a high rate, and did not slacken its speed. No gong was sounded nor other signal given. At that time of the evening many people were accustomed to leave such resort by the driveway. *Held* sufficient to justify a submission of the case to the jury.

McLaughlin, J., dissenting.

Appeal from trial term, New York county.

Action by John W. Dunican against the Union Railway Company of New York City. From a judgment dismissing his complaint, plaintiff appeals. Reversed.

Argued before BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Willard U. Taylor, for appellant.

Herbert R. Limberger, for respondent.

RUMSEY, J. This action is brought to recover damages for injuries received by the plaintiff by reason of a collision with one of the defendant's trolley cars, which struck him as he was attempting to drive across the highway on which the defendant's track was laid. Upon the trial, the court, after hearing the evidence of the plaintiff, dismissed the complaint, and from the judgment entered upon that dismissal this appeal is brought. The place where the collision occurred was a public highway known as "Van Nest's Road," in the county of Westchester. It was shortly after 9 o'clock at night of the 7th of July, 1895. At the place of the occurrence a private driveway from a summer resort, known as "Sulzer's Park," debouches into the highway on the north side. The tracks of the defendant are laid upon the north side of the highway, so that the track of a car going west is within a very few feet of the fence. On the east side of the private road, at its intersection with the highway, there stands a building extending along the highway about 30 feet, and running back 45 feet along the private road. The front of this building is within 10 feet of the defendant's track, and this space of 10 feet is diminished by a stoop extending a few feet in front of the building. Back of this building, and on the east side of the private driveway, there are, as the plaintiff testified, trees and bushes which obstruct the view to a very considerable extent to the eastward, the direction from which the car was coming that inflicted the injury upon the plaintiff. At the time of the occurrence it was quite dark. The plaintiff was driving at a walk a quiet horse down the private road towards the highway. He was surrounded by a large number of people, who were also going from the park to the street. As was generally the case at that hour of the night and at that season of the year, Sulzer's Park, being a public resort, seems to have been largely frequented by people. As to these details of the occurrence, there is no dispute.

As the complaint was dismissed at the close of the plaintiff's case, he is entitled, upon an examination of that ruling, to the most favorable inference which can be deduced from the evidence, and, if any of the facts are contested or doubtful, it must be assumed that they would have been found by the jury most favorably for the plaintiff. Rehberg v. Mayor, etc., 91 N. Y. 137, 141.

As bearing upon the question of the defendant's negligence, the jury might have found that this car approached the place where the private road intersected the highway at a high rate of speed, certainly 15 miles an hour and upward; that no gong was sounded, nor

other signal made, to notify people upon the highway of its approach; and that, going at that rate of speed, the car drove upon the crossing without giving any signal, and struck the plaintiff's wagon, demolishing it, and injuring the plaintiff. These facts would not only be sufficient, in our judgment, to require the jury to find that the defendant was negligent, but would go far to convict the gripman of criminal negligence, if he were indicted for that crime. Although the road from Sulzer's Park to the highway was a private road, yet it appears from the evidence that the persons frequenting the park were generally, at this hour of the night, making their way out upon the highway. It must be presumed that the defendant's gripmen and conductors were aware of the situation of this park, and knew of the location of this crossing. The privileges and correlative duties of a street-car company upon a highway are well settled. It is not expected that the street-car company, although operating its cars by machines of high power and running at a high rate of speed, will go along the highway without stopping, and without paying attention to the reciprocal rights of other passengers upon the highway, as a steam railroad is accustomed to do, and must do, to some extent. 2 Shear. & R. Neg. (5th Ed.) § 485a. But the street railroad, occupying, as it does, the highway, which is free to all people equally with itself, and in which it has no exclusive rights, is bound to run its cars with proper care over the highway, with due regard for the safety of all people who have occasion and equal rights with it to the use of the highway. It is well settled that, at the intersection of two streets, a street car running along one highway has no right of way as against any other vehicle crossing its track on the other highway. Kennedy v. Railroad Co., 31 App. Div. 30, 52 N. Y. Supp. 551; Hergert v. Railway Co., 25 App. Div. 218, 49 N. Y. Supp. 307; O'Neil v. Railway Co., 129 N. Y. 125, 29 N. E. 84. The reason of this rule is that the highway is free to all persons. The street cars, running, as they do, in a fixed track, and being unable to turn out, have, as to that track, rights in the highway superior to those of other persons who are going up and down on the same street, but, as to persons who have occasion to cross the highway, the rights of the street car are precisely the same in kind as the rights of other persons and other vehicles. If the driver of the street car approaching a private crossing has reason to believe that persons are in the habit of coming upon the highway at the time when he is approaching, he is bound to use towards those persons the same care that he would be bound to use with regard to other persons crossing the street at any regular crossing. At all times he is bound to run his car in such a manner that he may give warning of the approach of his car to persons having occasion to cross the highway, and that he may be able, like the driver of any other vehicle (having in view the greater difficulty of regulating his car), to avoid running upon people who are attempting to cross the highway, or who have occasion to go across the track in turning their wagons around or turning out to avoid other vehicles. In the particular case the jury might have found that, so far from making any effort

whatever to give a signal of his approach or keep his car in hand, the motorman was coming down noiselessly, and at a rate of speed equal to that which is used by steam railroads upon their own tracks, where they have the exclusive right and at places where they have no reason to expect to meet anybody. Clearly, this was negligence of a gross kind. 2 Shear. & R. Neg. (5th Ed.) § 485a.

In considering the question of the plaintiff's contributory negligence, this duty of the defendant must not be lost sight of. The plaintiff was not called upon, as matter of law, to watch and listen for the approach of this car using the highway, as he would have been called upon to watch and listen at a country crossing of a railroad company going upon its own tracks, where it had an exclusive right, but it was proper for him to take into consideration the duty of the defendant in running along the highway, and to suppose that that duty would be performed. 2 Shear. & R. Neg. (5th Ed.) § 485a. Even if he had seen this car coming, at a rapid rate of speed, 150 or 200 feet away from the place where he was approaching the highway, as the defendant claimed he might have done, he would have had the right to assume that the driver of the car would so reduce its speed when he approached the entrance to this private driveway that persons coming out upon the highway might have an opportunity to avoid him. But the jury might have found from this evidence that the plaintiff had no opportunity to see this car until he, seated in his buggy, had passed the corner of the house which stood at the intersection of the two streets. At that time he would have been something less than 10 feet from the track, and the head of his horse would have been almost upon the track. Whether it was negligence for him to drive so close to the track, without expecting that the car would be coming upon him at the rate of 15 miles an hour, when he reached that point and saw the car as close to him as it was, was clearly a matter for the jury. He had the right to cross the track, even though the car was approaching, and even though the fact of his crossing required the car to slacken its speed (Kennedy v. Railway Co., 31 App. Div. 30, 52 N. Y. Supp. 551); and whether he had sufficient opportunity to observe the approach of the car, or used due diligence in his effort to avoid it after he became aware of its situation, was clearly a matter for the jury to determine.

The fact that this was a private driveway, upon which the learned justice at the trial term seems to have laid considerable stress, was not controlling in this connection, because the jury might have found from the evidence that it was a usual thing at that time of night for a large number of people to be coming out of this driveway upon the highway, and that the railroad company's employés, who were traveling along the highway, were aware of that usual condition of affairs. But even if that were not so, and the plaintiff was coming out of his own grounds, he still had the right to assume that the street car would be managed with a due regard for his right to go upon the highway, and it would be for the jury to say, in this case, whether, in view of all the circumstances, the defendant was guilty of negligence in crossing the entrance to private grounds from this highway.

In either aspect, the case was clearly one for the jury, and the judgment dismissing the complaint must be set aside, and a new trial ordered, with costs to the appellant to abide the event. All concur, except McLAUGHLIN, J., dissenting.