beer was made by the brewing company to him, the war revenue measure was pending before congress. The proposition which, according to the testimony of defendant, was made to him by the agent of the brewing company, would inure to his benefit and advantage in the event that the revenue on beer should be increased, and he would lose nothing thereby if no change were made in the law. The rulings of the court in excluding the corroborating evidence, and in at first precluding defendant from testifying as to his object and motive in purchasing this beer, were calculated to convey to the jury the impression either that his attempted explanation was of no consequence or importance, or that it was too improbable for them to give credence thereto. The district attorney, upon cross-examination, sought to discredit defendant's explanation, and to convey the impression to the jury that he had no information on the subject of the increase of the price of beer until long after the commission of the crime, and that the increase in price of beer caused by the imposition of an additional revenue tax did not take place until the 1st day of July, 1898. One jury disagreed in the case, and it was conceded upon the argument that this excluded evidence was received on the former trial. Defendant was entitled to have the benefit of such explanation of the purchase and possession of this suspiciously large quantity of beer as he could make, and he was not obliged to go to the jury on his unsupported testimony upon that point. He was entitled to the testimony of the agent and peddler of the brewery company to corroborate him, and to show that the proposition for the purchase of this beer emanated from the brewery company, and not from him. Com. v. Robinson, 1 Gray, 555; People v. Fitzgerald, 156 N. Y. 253, 50 N. E. 846; People v. Dowling, 84 N. Y. 487; Filkins v. People, 69 N. Y. 101; People v. Baker, 96 N. Y. 340; People v. Jackson, 111 N. Y. 362, 19 N. E. 54; Robinson v. State, 53 Md. 151; Mack v. State, 48 Wis. 271, 4 N. W. 449; Brown v. Matthews, 79 Ga. 1, 4 S. E. 13; State v. Waltz, 52 Iowa, 227, 2 N. W. 1102. It cannot be said, as a matter of law, that these erroneous rulings of the court in excluding competent evidence did not materially prejudice defendant. Had the evidence thus erroneously excluded been received, we cannot say that the verdict would have been the same. We are therefore constrained, on account of the exceptions to the exclusion of this testimony, to reverse the judgment and grant a new trial.

The judgment and conviction should be reversed, and a new trial ordered. All concur.

---

(61 App. Div. 12.)

JOHNSON v. ROCHESTER RY. CO.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1901.)

1. STREET RAILROADS—INJURY TO PERSONS ON STREET—EVIDENCE—QUESTION FOR JURY.

Intestate was killed in a collision between his wagon and a street car; and a witness, who was in the wagon at the time, testified that they were about to cross the tracks at the intersection of two streets, and when the horse was between the cross walk and the first track the car was about 200 feet away, and was moving rapidly, and that its speed was not slackened on approaching the crossing. Another witness tes-

tified that at the time the car was from 75 to 100 feet from the crossing, moving at a high rate of speed, which was not slackened. If the motorman had taken proper means to stop the car when 75 to 100 feet from the crossing, he could have done so. He testified that he made no effort to stop the car till the horse was not over 15 feet away, and that the appliances did not work when he applied the reverse, but admitted that, if they had worked, he could not have stopped within that distance. The motorman's excuse for not stopping was that, just before crossing the track, deceased turned the horse so as to cross at a right angle, and that, if he had not done so, he would have passed to the rear of the car. Before the collision both the car and the wagon were in sight for a distance of 200 feet. *Held*, that the question of defendant's negligence and of intestate's contributory negligence was for the jury.

2. SAME—DAMAGES.
   Where deceased, a young man 27 years of age, strong and in good health, was killed in a collision with a street car, and it appeared that he was engaged in the saloon business, and devoted a portion of his earnings to the support of his father and his children, a verdict of $1,000 was not excessive, though it appeared that his habits were not good, and that he had not been successful in accumulating any property.

Appeal from trial term, Monroe county.

Action by William H. Johnson, as administrator of Andrew Johnson, deceased, against the Rochester Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The action was commenced on the 14th day of August, 1899, to recover damages sustained by the next of kin of Andrew Johnson, a brother of the plaintiff, on account of his death, which occurred on the 27th day of June, 1899, and was alleged to have been caused by the negligence of the defendant.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Charles J. Bissell, for appellant.
Charles Roe, for respondent.

McLENNAN, J. On the 25th day of June, 1899, the defendant was engaged in operating an electric, double-track, street-surface railroad in the center of Clinton street, which was 44 feet wide between the curbs, in the city of Rochester, N. Y. Clinton street extends substantially north and south, and is crossed at a sharp angle by Franklin street, which is 38 feet wide between the curbs. At about 10:30 o'clock at night of the day in question, the deceased was driving a single horse, attached to a light lumber wagon, going southeast at a sharp trot along the center of Franklin street and across Clinton street. He was sitting on a spring seat, on the right-hand side, and a Mr. Hanify was sitting with him on the left-hand side. A Mr. Kane sat between them, facing the back part of the wagon, and holding a bicycle between his knees. A car on defendant's road in Clinton street came from the south on the easterly track, and collided at the intersection of the two streets with the wagon being driven by the deceased, striking the hind wheel, overturning the wagon, and throwing the deceased out; and he sustained injuries which it is claimed caused his death, which occurred two days afterwards. There was an electric light at the intersection of the two streets, and as the deceased approached the crossing the

defendant's car was in plain sight for a distance of more than 200 feet. The deceased and the vehicle in which he was riding were as plainly visible to the motorman for a like distance. Hanify, who was called as a witness on behalf of the plaintiff, testified that when the horse was between the cross walk and the first track, a distance of about 16 feet, the car which was approaching the crossing was at Pleasant street, about 200 feet away; that the horse at that time was moving along at a good gait; and that when the horse got to a point between the two tracks he (Hanify) told the deceased to hurry up, and thereupon the deceased struck the horse with the lines, and he quickened his pace. The witness testified that the car was moving rapidly, and that its speed was not slackened in the least as it approached the crossing, or until after it had struck the wagon. As we have seen, when the collision occurred the deceased had very nearly made the crossing; only the hind wheel of the wagon having come in contact with the car. Kane, another witness called by the plaintiff, testified that when the horse was between the two tracks the car was from 75 to 100 feet distant from the crossing, that it was moving at a very high rate of speed, and that the speed was not slackened in the least as it approached the crossing. From the evidence it clearly appears that if the motorman had taken means to stop the car when 75 to 100 feet from the crossing, and when the horse was between the tracks and proceeding to cross, he could have done so, and thus avoided the accident. The motorman testified that he made no effort to stop the car until the horse was in front of it, and not more than 15 feet away; that he then tried to stop, and applied the reverse, but that for some reason the power did not work, and the collision resulted, although he testified that, if the appliances for stopping the car had worked, he could not have stopped within a distance of 15 feet, in view of the load which was upon the car. The witnesses Hanify and Kane testified that the deceased, in attempting to make the crossing, followed substantially the center line of Franklin street until the wagon was struck, thus crossing defendant's tracks at a sharp angle. The evidence of the defendant's witnesses is to the effect that as the deceased approached the tracks he turned the horse to the left, so as to cross the tracks at substantially a right angle, and that if he had not thus changed his course he would have passed to the rear of the car, and the collision would not have occurred; and this is the excuse given by the motorman for not having made an attempt to stop the car sooner than he did. The evidence is conflicting as to the rate of speed at which the car was moving at the time of the collision and immediately prior thereto. Plaintiff's witnesses testified that it was going very fast,—at a very high rate of speed,—while the motorman and other witnesses called by the defendant asserted that it was not going faster than four miles an hour. Whatever may have been the rate of speed, it is apparent that the car was not under control as it approached the crossing. From this state of facts, can it be said, as matter of law, that the defendant was free from negligence which caused the accident, or that the deceased was guilty of contributory negligence?

The questions suggested by the facts are: Was the deceased, when at a point between defendant's first track and the curb, and when he observed the car approaching at Pleasant street, 200 feet distant, reasonably justified in assuming that he could cross in safety before such car reached the crossing? And even when the horse which the deceased was driving had reached a point between defendant's two tracks, and the car was 75 to 100 feet away, was he justified in believing that he could make the crossing in safety? Those questions were answered in the affirmative by the jury, and, if such answers were justified by the evidence, the deceased was not chargeable with contributory negligence. Again, assuming that the deceased was driving at a good trot, and his horse had just reached the first track, and was proceeding to cross when the car was 200 feet away, going at a high rate of speed, was it negligence on the part of the motorman to continue to proceed towards the crossing without attempting to slacken his speed or have his car under control? When the horse which the deceased was driving was at a point between the two tracks, and just going on to the track upon which the car was moving, still trotting at a good gait, the car being then 75 to 100 feet away, was the defendant's employé guilty of negligence in not slackening the speed of the car and bringing it under control? Those questions were also answered favorably to the plaintiff by the jury, and we think, under the authorities, its determination must be regarded as final and conclusive. The rule defining the duty which a street-surface railroad company owes to a traveler in the movement of its cars at a street crossing is correctly stated in the headnote in Hergert v. Railway Co., 25 App. Div. 218, 49 N. Y. Supp. 307, as follows:

"A motorman in the management of an electric car has, at a street crossing, no right superior to that of a driver of a wagon which is crossing the street. Where such driver, when the car is approaching at a distance of from one hundred and fifty to one hundred and seventy-five feet, proceeds to cross the track, driving his horse at a walk, and the motorman, although his view of the track is unobstructed, makes no effort to check the speed of his car until it is too late to prevent its collision with the wagon, the motorman is guilty of negligence."

In the case at bar it is perfectly evident that if the motorman had observed and given attention when he was at Pleasant street, 200 feet away, he would have seen that the deceased was about to cross the track upon which the car was moving, and that the deceased would reach the point of crossing in advance of the car; and, when at a point 75 to 100 feet from the crossing, it should have been evident to him that a collision must result unless the speed of the car was slackened and it was brought under control. The jury were amply justified in concluding, under the circumstances, that the motorman was guilty of negligence in permitting the car to proceed at such a high rate of speed, and without making any attempt to control it, upon the assumption that the deceased would pass to the rear of the car, instead of in front of it.

In O'Neil v. Railroad Co., 129 N. Y. 125, 29 N. E. 84, Judge Earl, in writing the opinion of the court, after discussing the rights of a

street-surface railroad, and the use of its tracks in streets between crossings, said:

"But a railroad crossing a street stands upon a different footing. The car has a right to cross, and must cross, the street; and a vehicle has the right to cross, and must cross, the railroad track. Neither has a superior right to the other. The right of each must be exercised with due regard to the right of the other, and the right of each must be exercised in a reasonable and careful manner, and so as not unreasonably to abridge or interfere with the right of the other."

These cases furnish ample authority for the proposition that, under the facts disclosed by the evidence in this case, the question of defendant's negligence was at least for the jury.

The case of Buhrens v. Railroad Co., 53 Hun, 571, 6 N. Y. Supp. 224, is an authority for the proposition that the question of the negligence of the deceased, under the facts of this case, was also for the jury. In that case the court said:

"Assuming that the plaintiff saw the car approaching very fast, still there was nothing to indicate to him that it was not under control of the driver, and he had the right to believe that the latter would exercise proper care. The plaintiff supposed he would clear the car, and, although subsequent events proved that he erred in this conclusion, mere error of judgment was not necessarily negligence, when the proof shows that had the car been properly managed, as the plaintiff had the right to assume it would be, he would have been able to cross in safety."

To the same effect is Kennedy v. Railroad Co., 31 App. Div. 30, 52 N. Y. Supp. 551. These cases, we think, are not in conflict with Belton v. Baxter, 54 N. Y. 255, Motel v. Railroad Co., 99 N. Y. 633, McLean v. Railroad Co., 116 N. Y. 459, 22 N. E. 1062, and other cases cited by appellant's counsel.

It undoubtedly is the rule, established both by authority and common sense, that it is negligence for a person to attempt to cross a public thoroughfare ahead of vehicles of any kind, upon a nice calculation of injury if such attempt be made; and in the cases cited by appellant's counsel the circumstances were such as to justify the conclusion that the pedestrians and travelers in those cases made such nice calculations of injury, in making the attempted crossings, that, as matter of law, they were guilty of contributory negligence. The facts of those cases are clearly distinguishable from the facts of the case at bar. Whether or not the deceased was guilty of negligence which contributed to the injury, we think, was clearly a question for the jury. Whether or not the injury which the deceased received was the cause of his death was also a question of fact for the jury.

Under the evidence, it cannot be said that the verdict of the jury was excessive. The deceased was 27 years of age, and, according to the testimony of his brother, he was strong and healthy. At the time of his death he was engaged in the saloon business, and devoted his earnings, or a portion of them, to the support of his father and his children. The evidence quite clearly indicates that the deceased was not a man of good habits, and had not been successful in accumulating property, and how useful he might have proved to his family, had he lived, is purely problematical; but the jury heard

his character, habits, and prospects described by the witnesses, and we think $1,000, their estimate of the value of his life to his next of kin, cannot be said to be excessive.

Attention has been called to certain exceptions taken to the charge of the learned trial court, and to refusals to charge as requested. We are of the opinion that such exceptions do not present such error as to require a reversal of the judgment. It follows that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.