nace Company; and were not two or one which might be erected and operated by some one not in any manner connected with or claiming under said company. The object of the draftsman in formulating said clause probably was to emphasize the idea that the benefits of said contract should be extended to any person who might be operating a furnace as assignee of the corporation named.

It is urged by way of general consideration in favor of plaintiff's position that the benefit of any special rates granted by defendant ought to be secured to the Union Iron Company and its lessees like plaintiff, because it was the owner of the premises through which defendant secured its right of way. In answer to this it is to be remembered that the proposed and desired right of way extended through premises then leased for a long term·of years to the Buffalo Furnace Company. It was, therefore, a necessary party to the negotiations and contracts. While the evidence does not throw much light upon the subject, we may easily believe that the Union Iron Company was satisfied to secure its tenant's consent to the right of way by allowing it to take from the railroad company the contract for special rates. There were various ways in which the landlord in its dealings with the tenant might utilize and secure for its ultimate benefit the advantages of the contract thus taken.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except WILLIAMS, J., who dissents.

---

(96 App. Div. 487.)

### SOLOMON v. BUFFALO RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. STREET RAILROADS — VEHICLES — INJURIES TO PASSENGERS — INTERSECTING STREETS—RIGHTS OF USER.

   Where plaintiff was injured in a collision between a street car and a tallyho, on which plaintiff was riding, at a point where two streets intersected a third so as to form a triangle, such point would be regarded as a street intersection, as to the use of which the railroad company's right was equal to, but not superior to, that of the driver of the vehicle.

2. SAME—INSTRUCTIONS—CURING ERROR.

   In an action for injuries to a passenger on a vehicle in a collision with a street car at a street intersection, the court charged that the car had the paramount right of way in the street, in so far as its right to run its car over its track on that part of the street was concerned, but that it was incumbent on the street railway company to use all reasonable care and caution to avoid injury to plaintiff or to any one else. *Held*, that that part of the instruction requiring the railway company to use reasonable care to avoid injury to plaintiff did not cure the preceding part, which erroneously charged that the railway company had the paramount right of way.

3. SAME—MOTIVE.

   Where a traveler on a street attempted to cross a street car track at a street intersection where his rights were equal to those operating a street car in the street, his motive in attempting to cross the street at that point was immaterial, in an action for injuries sustained in a collision between his vehicle and the car.

---

¶ 1. See Street Railroads, vol. 44, Cent. Dig. § 193.

Appeal from Trial Term, Erie County.

Action by William Solomon against the Buffalo Railway Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Maulsby Kimball, for appellant.

Charles B. Sears, for respondent.

SPRING, J. On August 22, 1901, the plaintiff, a guest of Lautz Bros. & Co., was riding on their coach, crossing the tracks of the defendant on Main street, in the city of Buffalo, when a collision occurred with a car, overturning the vehicle and injuring the plaintiff. Main street extends north and south, and Scott street enters it from the east, but does not cross. Lake and Hanover streets intersect with Main on the west; Lake coming in from the northwest, and Hanover from the southwest. The intersection of these two streets with Main makes a triangular open space, the base of which is the westerly line of Main, and the northerly line of this flaring space extends beyond the projected southerly boundary of Scott street. Hanover street, composing a part of this extension at its conjunction with Main, is therefore northerly of the southerly boundary of Scott street extended. In the apex of the triangle made by Lake and Hanover streets the soap factory of Lautz Bros. & Co. is located. The tallyho owned by that firm, and with its driver and with several guests, started from this point for the Pan-American Exposition. According to the story of the plaintiff's witnesses, the driver started his coach diagonally across Main street towards Scott street, but with the purpose of getting on the farther or right side of Main street, in order to drive up on that side of the street. The defendant had two lines of track in Main street—the easterly used by north-bound cars, and the westerly by those bound south. As the coach was nearly over the south-bound or nearer track of the defendant, the rear was struck by one of the defendant's cars, and the accident occurred. The plaintiff's proof tended to show that the car was far enough away to afford ample opportunity to enable the drag to go over ahead of it without danger, but the car approached at an unusually rapid rate, was not under the control of the motorman, and he made no effort to check its progress. The version of the defendant's witnesses was that the coach was proceeding along Main street, and, unexpectedly and without warning, and when the car was too close to be stopped, the horses were turned, and the passage over attempted; also that the motorman used his best endeavors to stop the car. Wherever the truth may lie as to these disputed facts, the collision occurred opposite the Moeller House, which is located at the southwest corner of Scott street, at its junction with Main.

Whether the motorman at the time had his car under control, and whether he was negligent or careful in its management, are questions of fact; and we should not disturb the conclusion reached by the jury, except for an error in the charge which we deem fatal to the maintenance of the judgment. At the close of the main charge the

counsel for the defendant requested the court to charge "that, if the jury believe that the accident took place opposite the Moeller House, it would not be an intersecting street, and the car had the paramount right of way." The court, in response, charged as follows: "The car had the paramount right of way in the street, in so far as its rights to run its car over its tracks on that part of the street is concerned. It was incumbent, however, upon the defendant to use all reasonable care and caution to avoid injury to the plaintiff or to any one else" —to which the plaintiff's counsel duly excepted. "Opposite the Moeller House," where the coach was at the time of the accident, was in the diagonal course from the starting point to Scott street.

It is well settled that at a street intersection the railroad company has no right superior to the passing vehicle. The rights of the two are equal. Each must use the street—the car crossing it, and the vehicle passing over the tracks of the company. O'Neil v. D. D., E. B. & B. R. R. Co. et al., 129 N. Y. 125–129, 29 N. E. 959, 15 L. R. A. 82 et seq.; Buhrens v. D. D., E. B. & B. R. R. Co. et al., 53 Hun, 571, 6 N. Y. Supp. 224, affirmed 125 N. Y. 702, 26 N. E. 752; Johnson v. Rochester Railway Co., 61 App. Div. 12, 70 N. Y. Supp. 113. This rule obtains where the ends of two streets joining the street along which the street railway company has its tracks are not exactly opposite to each other, but substantially form a continuous street. Brozek, as Adm., v. Steinway Ry. Co., 23 App. Div. 623, 48 N. Y. Supp. 345; Bresky v. Third Ave. Ry. Co., 16 App. Div. 83, 45 N. Y. Supp. 108 (here one of the bisecting streets was 50 or 60 feet north of the one opposite); Mauer v. Brooklyn Heights Ry. Co., 87 App. Div. 119, 84 N. Y. Supp. 76; Freeman v. Brooklyn Heights Ry. Co., 87 App. Div. 127, 84 N. Y. Supp. 108. The crossing from Hanover and Lake streets to Scott street comes within the principle in these cases. While they are not strictly one street, or a continuation literally of either street, their termini at Main street are so nearly opposite that they are practically a continuous street. The reason for the rule exists in the present case the same as if Scott street extended across Main street.

It is strenuously urged that whatever error there may have been in the instruction of the court that the car had the paramount right of way was cured by the latter part of the statement that it was incumbent upon the defendant "to use all reasonable care and caution to avoid injury to the plaintiff or to any one else." The difficulty with this proposition is that it involves no limitation upon the instruction of the superior right of way which the court accorded to the defendant. Wherever the driver may have been on the track, the motorman was charged with the exercise of reasonable care to avoid collision with him. "Reasonable care" is a relative term. What constitutes its exercise in the middle of a block may be entirely inadequate at a street intersection. The necessity for its exercise by the motorman, however, is present over his entire route, but in varying degree; depending upon circumstances, and the absence or presence of peril to travelers in the street.

The fact that the driver of the drag was not intending to pass along Scott street is of no importance. What may be the motive in cross-

ing over the street car tracks is not pertinent when the traveler is within the territory where his rights are equal to those operating the car in the street. It is the locus in quo—the land which makes up the street intersection—that calls for the extra vigilance on the part of the motorman, and affords the assurance of additional safety or protection to the passing traveler or vehicle, rather than the fact that the wayfarer or conveyance is actually passing in front of an oncoming car. The likelihood of the street intersection being used by pedestrians or teams whose rights are on a par with those of the car at that place is what sustains the rule adverted to.

Of course, if the driver of the coach was passing up the westerly side of Main street, and suddenly and without warning veered his team to the right, and over the tracks of the defendant, when the approaching car was too close to be stopped by the motorman by the exercise of proper vigilance, the rule mentioned would not be applicable.

The plaintiff had no authority over the driver of the coach. He was a guest on the middle seat, and at the time of the collision, through no fault of his own, was hit by an advancing car within the circumscribed district which made a part of the crossing connecting Scott street with the two streets opposite. There his rights were equal to those of the defendant, and the instruction to the contrary was material error, calling for a reversal of the judgment and order. Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event, upon questions of law only; the facts having been examined, and no error found therein. All concur.