# CHARLESTON

ASHLEY, ADMINISTRATRIX, &c., *v.* KANAWHA VALLEY TRACTION CO.

Submitted March 7, 1906.    Decided October 23, 1906.

1. STREET CROSSINGS—*Equal Rights of Public and Railroad Company Thereto.*

    A street railroad company has an equal right, with the public, to the use of streets at street crossings. Neither has a superior right to the other. (p. 309.)

2. STREET INTERSECTIONS—*Speed of Cars Approaching Same—Collisions at—How to Avoid—Negligence.*

    It is negligence for a street car company to operate its cars at such a rate of speed as not to have them under control and to be able to stop them readily as they approach intersecting streets, in case it may be necessary, to avoid a collision or prevent an accident. (p. 311.)

3. STREET CROSSINGS—*Cars Approaching to Give Warning—Negligence.*

A street car company should give proper warning of the approach of its cars at street crossings. For a failure to do so it will be guilty of negligence.  (p. 311.)

4. SAME—*Speed of Cars at—Negligence.*

More care is required in operating street cars at street intersections than at other points, and if a street car company at such intersections runs its cars at an excessive and unusual rate of speed, it will be guilty of negligence.  (p. 311.)

5. STREET RAILWAY TRACK  *Crossing Same Before Running Car—When Not Contributory Negligence.*

It is not contributory negligence for one to attempt to cross a street railway track in front of an approaching car, if in doing so he exercises that judgment and care which a reasonably prudent and careful person would have exercised under like circumstances. (p. 313.)

6. SPEED OF ' CAR—*Regulation of, by Municipal Corporations by Ordinance.*

A municipal corporation may, within reasonable limits, regulate and prescribe the speed at which street cars may be operated over its streets, and when it has done so, by valid ordinance, it will be negligence *per se* for a street car company to run its cars at a speed exceeding that fixed by the ordinance    (p 314.)

7. STREET CARS  *Fenders to, by City Ordinance, Required—Without, Negligence per se.*

Where by valid municipal ordinance street cars are required to be equipped with fenders of an approved make, it is negligence *per se* to operate such cars without such equipment.  (p. 316.)

Error to Circuit Court, Kanawha County.

Action by Allie F. Ashley, administratrix, against the Kanawha Valley Traction Co.  Judgment for defendant, and plaintiff brings error.

*Reversed.    Remanded.*

LITTLEPAGE, CATO & BLEDSOE, JOHN BAKER WHITE, and CLARENCE BURDETTE, for plaintiff in error.

CHILTON, MACCORKLE & CHILTON, and T. R. ENGLISH, JR., for defendant in error.

SANDERS, JUDGE:

This writ of error is to a judgment of the circuit court of Kanawha county, rendered in an action brought by Allie E.

Ashley, administratrix of John J. Ashley, deceased, against the Kanawha Valley Traction Company, to recover damages for the alleged wrongful and negligent killing of said John J. Ashley by the defendant company. The circuit court excluded the plaintiff's evidence, directed a verdict for the defendant, and entered judgment dismissing the action.

The question to be determined in reviewing the judgment of the circuit court, is whether or not the defendant is chargeable with such negligence as directly caused the injury from which Ashley died, and if so, was Ashley guilty of such contributory negligence as would bar plaintiff's right to recover.

On the 6th day of October, 1902, the defendant was the owner and operator of a street railroad in the city of Charleston, and on that day the deceased was standing at the southeast corner of Virginia and Court streets, in said city, engaged in conversation with one George Warner. At this time a car of the defendant company was going east on Virginia street, in the direction of Ashley, and when it had reached a point some distance from where he was standing, he mounted his bicycle and started across the street in front of the approaching car. When nearly across the car track the rear wheel of his bicycle seemed to hang momentarily upon the rail farthest from where he started, and while in this position the car struck the rear wheel of the bicycle, and as a result the rider was thrown against the curbstone, and received injuries from which he died shortly afterwards.

The place of the accident is where Virginia and Court streets cross, and Ashley was traveling in a northerly direction on Court street, crossing Virginia street, over which the defendant's car track ran. It is not clear, from the record, just where the car was at the time Ashley mounted his bicycle and started across the track, but we think it can be safely said that it was at least two hundred feet west of the point where the accident occurred. The car was running at a high rate of speed—estimated by the witnesses to have been from fifteen to thirty miles an hour—one witness estimating it from fifteen to seventeen miles, another from twenty-five to thirty miles, and two other witnesses from eighteen to twenty-five miles—the lowest estimate being fifteen miles and the highest thirty miles an hour. The speed

of the car was not slackened until after it struck the bicycle, after which it ran about ninety feet before it was stopped. One of the witnesses stated, in reply to an inquiry as to whether or not from the time he first saw the car until it struck Ashley, there was any slackening of speed: "I didn't see any. Of course the car was running so fast that it could not be slackened up right there. I don't think it could be. I didn't see it slacken none." Another witness stated that the car was running unusually fast at this time, and also stated that at this point the cars usually ran about ten or twelve miles an hour. The gong was not sounded and no alarm whatsoever was given until the car was within about thirty feet of Ashley, and this was after it had passed the western line of Court street. At the time Ashley was attempting to cross Virginia street there was also a wagon crossing it, which was between him and the street car. The wagon crossed the street car track and had gone beyond it about ten or fifteen feet when the car reached the point at which it had crossed.

It also appears that at the time of the accident there was an ordinance of the city of Charleston in force, limiting the speed of street cars within the city limits and within the business portion of the city to eight miles, and in the suburban districts to fifteen miles, an hour. There was also another ordinance of said city, making it unlawful for cars to be run or operated therein without fenders of the most approved make. The car in use at the time of the injury here complained of was not equipped with a fender of any character whatsoever.

In dealing with the questions presented, we will first do so independently of the ordinances of the city limiting the speed of cars and requiring them to be equipped with fenders.

The place where the accident occurred being a street crossing, we approach a solution of the questions involved with the understanding that at this point the rights of the parties were equal. A street railway company operating its cars over the streets of a town or city has at street crossings no higher or paramount right of way to that of pedestrians or other users of such streets, but its rights to the use of streets at street crossings, where the car tracks cross other streets

than the one they run along, is precisely the same as that of pedestrians or vehicles crossing its tracks there. Neither has a superior right to the other. The right of each must be exercised in a reasonable and careful manner, having due regard for the rights of others, and so as not to unreasonably obstruct or interfere with the right of passage or proper use of the streets. The car has the right to cross and must cross the street, and the pedestrian or traveler has the right to cross and must cross the railroad track. The rule is somewhat different at points other than street intersections, or crossings, but as this accident occurred at a crossing, it is not necessary to refer to or point out such difference. *Bass* v. *Norfolk Railway & Light Co.*, 100 Va. 1; *Richmond, &c., Railroad Co.* v. *Garthright*, 92 Va. 627; *Solomon* v. *Buffalo Ry. Co.*, 89 N. Y. Supp. 99; Thompson on Negligence, section 1399; Nellis, Street Railways, section 14.

The care required to be used by the defendant at street intersections must be such as is commensurate with the increased dangers arising from the travel at such crossings. The defendant, operating dangerous machinery over the streets of a city, must know, and is bound in law to know, that others have an equal right to the use of the streets and may be upon them. Where a pedestrian or traveler is approaching a street crossing toward which a car is approaching, the duty to stop and avoid a collision is on the party who can most easily and readily adjust himself to the exigencies of the case; and as to whether or not the defendant used that degree of care chargeable to it depends upon all the facts and circumstances. There can be no rule of general application defining the degree of care required to be used by a street railway company in operating its cars over the public streets of a city, or fixing the rate at which such cars should be run, because of the varied facts and circumstances applicable to each particular case; and in every instance the true inquiry is, was the car, at the time of the injury, being operated in a prudent and careful manner, taking into consideration the place of its operation, the various uses of the street, and the amount and kind of usual travel, and the other facts and circumstances surrounding the case. More care is required to be exercised at street intersections than at other points, because the company may

expect pedestrians or other users of the streets to be constantly crossing its track, as they have the lawful right to do, and therefore the car should approach the crossing in a careful and cautious manner, so as to avoid injury to others who are using the streets in a proper and careful way.

In the case of *Richmond, &c., Ry. Co.* v. *Garthright, supra,* it was held that it was gross negligence in a street railway company to so overcrowd and load down its cars with passengers beyond any reasonable or proper limit as not to be able to stop them readily as they approach intersecting streets in case it may be necessary to avoid a collision or prevent an accident.   It was the duty of the defendant to have given notice or warning upon approaching the crossing, and not only this, but as it neared the crossing to run at such a rate of speed as to have the car under control and be able to stop it readily. *Bass* v. *Norfolk Ry. Co., supra.*

When we apply these principles to the plaintiff's evidence, we can but come to the conclusion that the case should have been submitted to the jury for their determination as to whether or not the defendant was guilty of negligence.   The defendant, at the street crossing where the accident occurred, in the business part of a populous city, was running its cars at from fifteen to thirty miles an hour, as estimated by the witnesses—none of them making it less than fifteen miles, and none of them fixing it at a higher rate than thirty miles. It is true there is some controversy as to whether this point is in the business portion of the city, but it must be remembered that this is a motion to exclude evidence, and we must say upon this motion that this is so, because the jury, under the evidence, could have found this fact.   While so operating the car, the motorman could see that a wagon was crossing the car track at the crossing where the accident occurred, between the point where Ashley was injured and the car, and also while the car was about two hundred feet from the crossing he could see that Ashley was attempting to cross the track.   Notwithstanding this, the speed of the car was not slackened, and no effort was made to check its speed, nor was any care whatsoever used to avoid a collision with the wagon or the deceased.   Not only did the motorman continue to run the car at this high rate of speed up to the point where the streets intersect, but it was continued at the same rate of

speed across Court street until the wheel of Ashley's bicycle was struck, notwithstanding the fact that he was in plain view of the motorman at the time he started across the track, and so continued until the car struck his wheel. No effort was made to stop the car until it struck the wheel, and then it could not be stopped until it had gone about ninety feet beyond the point at which the accident occurred. No notice or alarm was given, and the gong was not sounded, taking the most favorable view of it for the defendant, until the car was within thirty feet of Ashley, and after it had passed the western line of Court street. These facts the jury could have found, and this being so, the case should have been submitted to them. They should have been permitted to pass upon the evidence, and by their verdict say whether or not these facts were established. *Kenneweg Co.* v. *Miley,* 59 W. Va. 360 (53 S. E. 556).

Although the jury could have found from the evidence that the car was not operated in a careful and prudent manner, yet, before the plaintiff could recover, the negligence of the defendant must have been the proximate cause of the injury. The company may have been negligent, yet, at the same time, if the injury was the result of an inevitable accident, it could no more be held liable than it could if it were free from negligence, and operated its car in a careful and prudent manner, and therefore we will inquire, was this injury the direct result of the defendant's negligence, or was it the result of an inevitable accident? The rear wheel of the bicycle hung momentarily upon the rail of the car track. Was this such an event as would have been expected by the company in operating its car in a prudent and careful manner? In other words, would a prudent and careful person, in operating the car in a prudent and careful manner, have foreseen or anticipated the happening of such an event? If not, then the accident must fall within the inevitable class. This should have been submitted to the jury. The evidence is such as called for its submission to them for their decision.

A bicycle is a vehicle. It may be lawfully ridden upon a street or highway, and has the same rights upon the highway as other vehicles, and it is the duty of a street railway company to give to a bicyclist who is riding on or attempting to

cross its track in front of its car the usual and sufficient warning, and to exercise the same degree of care as is required in favor of other vehicles. Here the rear wheel of the bicycle only hung momentarily upon the rail, and as to whether or not this could have been anticipated should have been left to the jury.

But it is urged that the plaintiff's right to recover is barred by the contributory negligence of the deceased. Of what does this negligence consist? The car, at the time Ashley started from the corner of the street where he was in conversation with Warner, was about two hundred feet west of the point where the accident occurred, and the distance that he had to travel in order to pass over the track was about twenty-five feet. Then the question arises, would a reasonably prudent person, under the existing circumstance, have attempted to cross the track? If so, we cannot say that Ashley was guilty of negligence. Defendant's counsel contend that Ashley, seeing the car, and knowing that it was coming in his direction, voluntarily mounted his bicycle and attempted to cross the track in front of it. This is true, but it certainly cannot be said that because a person can see a car two hundred feet away, coming in the direction of the point where he expects to cross the track, he has to stand and wait until the car has passed. In a populous, active business city it would be an anomaly to hold that every traveler, in endeavoring to cross a street car track, must look and listen for a car, and if he can hear or see one distantly approaching, he must wait until the car has passed before attempting to cross the track. This is certainly not required. Ashley had the right to judge as to whether or not he had sufficient time within which to cross the track in front of the approaching car, and it was for the jury to say whether or not he exercised such judgment as a reasonably prudent person would have exercised under like circumstances. He had the right to assume that the street car company was running its car at a lawful rate of speed—that it would approach the street crossing in a lawful manner—that it would have due regard for his rights and when it saw him upon its tracks it would so operate its car as to avoid, if possible, injuring him. The question as to whether or not the decedent was guilty of contributory negligence was a question for the jury, and the

testimony bearing upon this feature of the case should have been submitted to them. *Richmond Passenger & Power Co.* v. *Gordon*, 46 S. E. 772; *Indianapolis Street Railway Co.* v. *Schmidt*, 71 N. E. 663; *Moore* v. *Metropolitan Street Ry. Co.*, 82 N. Y. Supp. 778; *Dallas &c. Ry. Co.* v. *Illo*, 73 S. W. (Tex.) 1076; *Bertsch* v. *Metropolitan Street Ry. Co.*, 68 N. Y. App. 228; *McDermott* v. *Brooklyn Heights R. Co.*, 85 N. Y. Supp. 807; *Cass* v. *Third Ave. R. Co.*, 20 App. Div. (N. Y.) 591; *Hanheide* v. *St. Louis Transit Co.*, 78 S. W. (Mo.) 820; *Meng* v. *St. Louis &c. Ry. Co.*, supra.

The plaintiff offers another reason why the court erred in excluding the evidence and directing a verdict for the defendant, and that is, that at the time of the injury complained of there was an ordinance of the city of Charleston in force, limiting the speed of street cars in the business portion of the city to eight miles an hour, and in the suburban district to fifteen miles an hour, and that it having been shown that the place at which the accident occurred was within the business portion of the city, and that the car was being operated at not less than fifteen miles an hour, that the company is then guilty of negligence *per se*.

A municipal corporation, for the protection of life and property, has the unquestionable right, under its police power, to adopt ordinances limiting and regulating the speed of street cars operating upon its streets. This being within the constitutional power of such corporation, a violation of such ordinance, if it be the direct and proximate cause of the injury, is negligence *per se*. "Here the general conception of the courts, and the only one that is reconcilable with reason, is that the failure to do the act commanded, or the doing of the act prohibited, is negligence as mere matter of law, otherwise called negligence *per se;* and this, irrespective of all questions of the exercise of prudence, diligence, care or skill; so that if it is the proximate cause of hurt or damage to another, and if that other is without contributory fault, the case is decided in his favor, and all that remains to be done is to assess his damages." Thompson on Negligence. section 10.

The courts are at variance as to whether or not a violation of the ordinance which is the direct and proximate cause of the injury is negligence *per se*, or whether it is simply evi-

dence of negligence, to be submitted to the jury. The great weight of authority seems to hold that it is negligence *per se*, and this, in reason, seems to be the better rule. *Dietring* v. *St. Louis 'Transit Co.*, 85 S. W. R. 140; *Kolb* v. *Same*, 76 S. W. 1050; *Myers* v. *Same*, 73 S. W. 379; *Jackson* v. *Kansas City, &c., R. Co.*, 157 Mo., 621; 58 S. W. 32; *Central of Georgia Ry. Co.* v. *Bond*, 17 Am. & Eng. R. Cas. (N. S.) 757; *Tobey* v. *Burlington &c. R. Co.*, 94 Ia. 256; *St. Louis &c. R. Co.* v. *Huggins*, 20 Ill. App. 639; *Omaha St. Ry. Co.* v. *Duvall*, 40 Neb. 29; *Riley* v. *Salt Lake Rapid Transit Co.*, 10 Utah 428. "It is to be regretted that two or three authoritative courts have fallen into the aberration of holding that the violation of a statute or municipal ordinance, enacted for the public safety, does not establish negligence *per se*, but is merely what the books term 'evidence of negligence,'—that is to say, competent, but not conclusive evidence to be submitted to the jury on the question of negligence or no negligence. It seems to have escaped the attention of the judges who laid down this rule, that it has the effect of clothing common juries with the dispensing power." Thompson on Negligence, section 11.

Was the violation of the ordinance the proximate cause of the injury? The plaintiff's intestate is presumed to have known of the existence of the ordinance, and had the right to believe that the car was being operated at a speed not exceeding eight miles an hour. The car approaching him, it was impossible for him to judge accurately as to what speed it was traveling, but the motorman knew that the speed should be limited to eight miles an hour, and he knew that he was traveling at a much greater rate of speed than that prescribed by the ordinance. If the provisions of the ordinance had been complied with, the deceased would have had time to have passed over the track without injury. This the jury could have found from the evidence, and if this be true, then they could have found that the violation of the ordinance was the direct and proximate cause of the injury.

And again, it is advanced that another ordinance of the city of Charleston was in force, requiring the cars of street railway companies to be equipped with fenders of the most approved make, and that if the car which struck the bicycle

·of the deceased had been equipped with such fender, the injury would not have occurred.   What has been said as to the power of a municipal corporation in adopting the speed limit ordinance can also be applied to the adoption of the ordinance now under discussion.   The adoption of the ordinance· is clearly within the constitutional power of a municipal corporation.   This ordinance is also shown to have been violated.   But it will not do to show only the violation of the ordinance.   It must be shown that such violation is the proximate cause of the injury—that if the car had been equipped with fenders, as provided by the ordinance, that injury would not have occurred.   This is proper to be shown to the jury.   It is, however, urged by the defendant that the evidence shows that there are two kinds of fenders of an approved make, one projecting out in front of the car and the ·other hanging underneath the front part of the car, and that this being so, the company would have the right to elect which of the two kinds of fenders it would use, and that if it should use the last mentioned, the injury would have occurred the same as if no fender had been used.   These are questions of fact to be submitted to the jury.   If it can be shown that the accident would not have occurred if the car had been equipped with such fender as the ordinance prescribed, and that the car was not equipped with such fender, then this would be negligence sufficient to charge the company.   But upon the other hand, if it could be shown that the accident would have happened if the car had been equipped with such fender, the same as it did when not so equipped, then the omission to provide such fenders would not be the proximate cause of the injury, and the company could not be held liable for failing to so provide them.   Evidence tending to show either of these theories is admissible.   *Henderson* v. *Durham Traction Co.*, 44 S. E. R. 598.

The evidence of Joseph Moss as to the rate of speed at which the car was running, is admissible, under the authority of *McVey* v. *Chesapeake and Ohio Ry. Co.*, 46 W. Va. 111: "The speed of a passing train is not a question of science, but of observation, and anyone possessing knowledge of time and distance is competent to testify in relation thereto;" and citing *R. R. Co.* v. *Van Sternberg*, 17 Mich. 99.

The defendant says that the judgment could be sustained

because the plaintiff failed to prove that Allie E. Ashley was duly appointed the administratrix of the estate of John J. Ashley. She sues as such administratrix, and under the pleadings she was not called upon to prove it. A plea to the merits. admits it. This is not an open question. In the recent case of *Hanley* v. *W. Va. Cent. & Pittsburgh Ry. Co.*, 59 W.. Va. 419 (53 S. E. 625), it is so held, and also the same is. held in *McDonald* v. *Cole*, 46 W. Va. 186. But were this, not so, still the record shows that the defendant admitted that the plaintiff was the duly and regularly appointed administratrix of the deceased.

The judgment is reversed.

*Reversed..*