## THE DIFFICULT TASK OF A TRIAL JUDGE ON MOTION TO SET A VERDICT ASIDE.

Common Pleas Court of Franklin County.

JAMES C. NICHOLSON V. SCIOTO VALLEY TRACTION CO.

Decided, September 16, 1912.

*The Scintilla Rule—Prima Facie Case—Weight of Evidence—No Evidence Distinguished from Evidence without Legal Weight—Difficulty Always in Separating the Function of the Court and the Jury—Problem of the Court on Motion to Direct a Verdict for the Defendant Distinguished from that Presented on Motion to Set Verdict Aside.*

The testimony of non-expert witnesses as to the speed at which a car or train was running at a particular moment is of little weight, and while testimony by such witnesses that the car which caused the accident was "going pretty fast," and at a "pretty good rate," and as one witness "thought," was going "awfully fast," is sufficient under the scintilla rule to send the case to the jury. it is not sufficient to support a verdict for the plaintiff where the sole ground of negligence charged against the defendant company was the running of the car at an unlawful rate of speed, and the testimony of the plaintiff was contradicted by the surrounding circumstances and by the testimony of disinterested witnesses called by the defendant, some of whom were experts.

*C. D. Saviers* and *J. C. Nicholson,* for plaintiff.
*J. E. Todd,* contra.

KINKEAD, J.

Plaintiff's intestate, and his child of the age of six years, were killed by a car of defendant company. The child, with her father and mother, was walking south on Fourth street between Woler street and Innis avenue. The petition alleges that the child was some distance ahead of her parents; that at or near the intersection of Welch avenue the child started across Fourth street. It is alleged that the father, while his child was crossing the street and tracks, saw defendant's car coming at a high and dangerous rate of speed, and saw that his child was in imminent danger; that he ran forward onto the track

to save its life, and while in the act of saving the child, and before he could get off the track, and without any fault on his part, he was killed.

The neglect charged against the company is that the motor-man saw the deceased and the perilous position in which he and his child were in, in ample time to have stopped the car and have avoided the injury, had the car been running at a safe and lawful rate of speed, but that the motorman did not stop the car, but ran the car at an unlawful and high and dangerous rate of speed, at about twenty-five miles an hour, and sounded no warning until within a few feet of plaintiff's intestate.

The answer sets forth some of the circumstances, the pass-ing of a city car, claiming that the child ran across the east track onto the west track and immediately in front of defend-ant's car while the father was concealed from the view of defendant's motorman; that the father ran after the child and collided with her, while upon the track, with such force as to knock her down upon the track immediately in front of defend-ant's car; and that while plaintiff's intestate was trying to rescue the child from its perilous position he was struck by the car.

The claim of defendant is that the death of plaintiff's in-testate was caused solely by his own negligence in going upon the track immediately in front of the car.

It is apparent that the sole ground of negligence charged against defendant is running at an unlawful rate of speed. And contributory negligence is charged against the deceased. The verdict of the jury was for $3,500. Several grounds of er-ror are alleged in the motion for a new trial. As the court views the case now the chief question is whether the verdict is sustained by sufficient evidence.

The motion for a new trial was submitted at the close of last term, and because of the importance of the case, it has been held during the adjournment period that more careful consideration could be given it.

The responsibility of the court where such verdict was ren-dered as is this one, loss of which will be felt so keenly by those in whose favor it is, is to be assumed with due and proper appreciation.

This case has led to a more considerate attention to the relative function of court and jury. The judge and the jury together constitute the court, the one no more than the other, nor the one less than the other. The judge is required to be cautions and circumspect during the trial that he will not transcend the province of his duty. And when it comes to a question of affirming or setting aside a verdict, the court is bound not to act beyond its power.

The action of the trial court upon a motion for a new trial is among the most important judicial functions. It involves a review of one's own acts as well as that of the jury. To properly review one's own rulings, the mind must be opened wide to discover mistakes, and must be broad and big enough to readily acknowledge error. It ought to be the first to desire to correct injury done by some mistake. The law is impartial between parties.

When the court ruled on the motion for a non-suit, it was confronted with the scintilla rule. Plaintiff's own evidence refutes the claim that no warning was given by defendant of the approach of its car. But it was thought that there was a scintilla which tended slightly to show that defendant's car might have been running at an unlawful rate of speed. And it was considered that the question whether plaintiff's intestate was guilty of contributory negligence in his attempt to rescue his child was, under the circumstances, one appropriate for the jury to determine.

The scintilla of evidence was made up as follows:

A passenger on the car said that she did not know how fast the car was running, had not the least idea; did not ride much on the cars, finally saying: "Well it was going pretty fast." "I thought the car was going awfully fast."

William Richardson, for plaintiff, was first attracted by hearing some one holloa, he was not looking before, but looking after hearing the holloa, he had an opportunity to observe the car from his residence on Welch avenue for a moment. He said: "I couldn't tell exactly how fast it was going, but it was going at a pretty good rate." "I couldn't make no estimate, because I don't follow the business."

Mrs. Chandler, plaintiff's intestate's widow, stated in answer to a question:

"Are you able to tell how fast that car was going?" said, "About thirty miles an hour."

There was claim in the evidence of excessive speed to be inferred from the distance within which the car was stopped.

J. W. Kraner stated the distance between where the deceased was, and where the car stopped, was about 164 feet. It seems to be the opinion among all witnesses that it stopped down at the next street corner by the grocery store. The witness Zimpfer put the distance within which the car stopped as 90 feet.

There was no evidence offered by plaintiff as to the nature of the car, its brake equipment, nor any opinion evidence as to within what time such a car, under all circumstances, could be stopped.

No one can reasonably claim otherwise than that there was no more than a mere scintilla of proof. "About thirty miles an hour" was about all there was. And this estimate was based upon a test made by some one else which Mrs. Chandler witnessed when a car was running as fast as she thought the one was running which killed her husband.

W. M. Downey, plaintiff's witness, said he was first attracted by hearing the car whistle.

For defendant, J. W. Brown, motorman on the city car passing the interurban car going north, stated definitely where the cars passed "pretty near Markeson," that he stopped his car because he heard the whistle on the Scioto car. That the latter "was going he supposed ten miles an hour—something like that, eight or ten."

Burnhardt, conductor on the city car, said the interurban car was "running about the ordinary speed as they generally do"; that they were running a little faster south than the city car was running north; the city car, he said, was running five or six miles an hour.

J. M. Butler, a passenger on the interurban, said the car was "not running more than eight or ten miles an hour; the car was traveling slowly—that it was not going rapidly."

Thos. Hampson, also a passenger on the traction car, a farmer, with experience as a motorman on city cars, said: "Well, I could not say exactly, but I think about twelve miles an hour; something like that."

J. E. Newlove, motorman on the interurban car, said the speed of the car "was twelve miles an hour, at the moment car was drifting, I was not at the time using the current—shut off two squares north of Markeson. Had the car at the required speed."

Such are the various statements of opinion as to speed. The rules required that the controller must not be moved beyond the fifth notch—which it is figured will carry the car between fifteen and twenty miles an hour. The required speed of twelve miles is regulated then by getting the momentum, and then let the car drift. Calvin Skinner, the superintendent, p. 140, gave his opinion as to the distance within which the car might be stopped according to the rate of speed. At eight miles an hour, within 85 feet; about 9 miles per hour, about 105 feet; ten miles per hour, about 120 feet; eleven miles per hour, 133 or 140 feet; 12 miles per hour, close to 150; 13 miles per hour, about 175; 14 miles per hour, pretty close to 190 to 200; 15 miles per hour, about 235 to 240 feet; and so on.

In giving this opinion, he assumes that everything is in good working order and the rail was as adhesive as it could be; if the rails were covered or partially so with foreign matter the wheels would skid. Sometimes conditions make it almost impossible to tell where you will stop; the various speeds to which the car may stop will be increased by the descending grade of the track. The evidence on both sides indisputably shows that the track in question was down grade. There is no evidence on either side as to the condition of the track.

The testimony of Mr. Wolf, draughtsman, stated the total distance between Markeson street and Welch avenue is 220 feet, and the descending grade is 59 per cent.

The evidence shows that the motorman started his endeavors to stop the car just after passing Markeson street and the car stopped alongside of the grocery store on Welch avenue. Taking off some feet at Markeson street and some for the space covered by the grocery store at Welch avenue, we will be justi-

fied in deducting 30 to 40 feet from the 220 feet distance between the two streets, which might make the car stopping at 175, or 180 to 190 feet, which is not out of tune much if any with Mr. Skinner's estimate, which in the absence of testimony as to conditions leaves not much to rest on.

The point which the jury no doubt relied upon mainly in concluding that the car was running at an excessive rate of speed is found in the statements made by motorman Newlove on cross-examination. He states that there were seven regular stops at street crossings between the union station and Parsons avenue; the car left the station at 10 A. M. and the accident between Markeson street, and Welch avenue, took place at 10:12.

The plat introduced only covers the territory surrounding the place of accident; there is no evidence as to what the distance was from the station to the place of the accident; nor that from the latter place to Parsons avenue. The condition of the record as to the matter of speed we think has been fully stated.

The evidence shows that the deceased, his wife, and children were walking out in the street, instead of on the sidewalk.

What occurred is best stated from the testimony of Mrs. Chandler, and the motorman and conductor on the city car. Mrs. Chandler states:

"Well, about in front of Kenedy's. The city car was going north, and after the city car had passed, my husband said to the little girl, 'Let's cross the street.' She started to run, and he started to run after her; and I looked up and saw the big car coming, and I stood still."

The big car, she said, was about a block north. The next she saw was Mr. Chandler and Thelma rolling along under the car.

J. W. Brown, motorman on the city car, stated as he saw Chandler, his wife and children, that he stopped his car and looked back because he heard the interurban whistle; he saw the little girl running down the track; saw them next when the Scioto car blowed whistle, when they (Scioto car) got pretty near even with the front end of his car and he turned around and saw the little girl on the track. When he commenced blowing whistle looked back and the little girl had run over on

the track and the man started after the girl. Little girl not far in advance of father. When motorman blew whistle I saw him slapping his air on—noticed this just as he was passing me; saw the girl running probably fifteen or twenty feet in front of the car.

C. H. Burnhart, conductor on the city car, was on running board of this car.

"His attention was drawn to the matter by seeing these people walking on the street; that's what drew his attention and he looked to the little girl ran behind their car to cross the street and saw the girl on the track and just then the man ran over to grab the little girl, and when he grabbed the little girl, he turned to come back, and the car hit him and knocked them both down."

The traction car, he said, when the girl ran behind their car was about by the Southwood School.

The evidence is undisputed that the gong was sounded, and the whistle blown; also that the motorman applied the emergency brakes. He also states that the little girl saw the car when he blew the whistle and started to run back across.

At the close of all the testimony upon renewal of the motion to direct a verdict, the court was confronted with a question of a scintilla of evidence, answered by what seemed an undoubted weight of evidence, and undisputed evidence which showed contributory negligence of the deceased in being the cause of the child's being placed in danger. The evidence seemed not to be merely evenly balanced.

Growing out of the question of the weight of evidence and the relative functions of court and jury is the scintilla doctrine of long service as a rule of practice in Ohio:

"If the evidence tends to prove all the facts upon which it is incumbent on the plaintiff to establish in order to maintain his action, he has the right to have the weight and sufficiency of the evidence passed upon by the jury and it is error for the court to grant the motion (for verdict) and render judgment against him." Stockstill v. Railway, 24 Ohio St., 83; Cincinnati St. Ry. v. Murray, 53 Ohio St., 570.

As stated in some decisions, if the evidence produced by plaintiff presents a prima facie case, it is for the jury. Such

a rule will work well perhaps, excepting in cases where the evidence offered by the defendant is of apparent greater probity and weight. In that kind of a case if the verdict be returned for plaintiff the court will be compelled to give its view on the sufficiency and weight.

Upon a motion to direct a verdict at the close of all the evidence, in such a case, the court is confronted with the question whether it shall set the verdict aside, if found in favor of plaintiff.

Some decisions maintain the rule of practice that if in the opinion of the court there is not evidence to sustain the verdict, should one be found, and upon motion for new trial the court would have to set it aside, such action will then be taken on motion to direct a verdict and nonsuit will be entered. *Baulien* v. *Portland*, 48 Me., 291; *Greenleaf* v. *Railway*, 29 Iowa, 22; *Cagger* v. *Lansing*, 64 N. Y., 417.

In a number of jurisdictions the rule of practice is followed of granting a nonsuit in cases where it appears from the whole evidence a verdict, if found, would have to be set aside. *Vanderford* v. *Foster*, 65 Cal., 49; *Livesay* v. *Bank*, 36 Colo., 526; *Illinois Cent. Ry.* v. *Bailey*, 222 Ill., 480; *Morton* v. *Frankfort*, 55 Me., 46; *Connor* v. *Giles*, 76 Me., 132; *Creamer* v. *McIlvain*, 89 Md., 343; *Wright* v. *Railway*, 86 Mass. (4 Allen), 283; *Steves* v. *Railway*, 18 N. Y., 422; *Benoit* v. *Railway*, 154 N. Y., 223; *Harrah* v. *Bank*, 26 Okl., 620; *State* v. *Couper*, 32 Ore., 212; *Michael* v. *Machine Works Co.*, 90 Va., 492; *Kuykendall* v. *Fisher*, 61 W. Va., 87; *Griggs* v. *Houston*, 104 U. S., 553.

The prevailing principle among the decisions which repudiate the scintilla rule is, not whether there is some evidence which tends to prove, but whether there is evidence upon which the "jury may reasonably and properly conclude" upon the question at issue in plaintiff's favor. The repudiation of the rule is also based upon the theory that there is in every case a preliminary question which is one of law, whether there is any evidence on which the jury may properly find the question for the party on whom the burden of proof lies. If not, the question should be decided by the court and a verdict directed. It is not a question "whether there is literally no evidence but whether there is

none that ought reasonably to satisfy the jury that the fact sought to be proved is established.'' The question is ''not whether there is literally no evidence, but whether there is any which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed.'' Where the testimony ''is so light and inconclusive, that no rational, well-constructed mind can infer from it the fact which it is offered to establish,'' there is nothing for the jury. *2 Thompson, Trials,* Sections 2247, 2248; *Toomey* v. *Railway,* 3 C. B. (N. S.), 150; *Ryder* v. *Wombell,* L. R., 4 Exch., 32; *Commissioners Marion Co.* v. *Clark,* 94 U. S., 278; *Belt* v. *Marriott,* 9 Gill (Md.), 331.

''There is no practical difference,'' it is said, ''between no evidence and evidence without legal weight. The better and improved rule is, not to see whether there is any evidence, a scintilla, or crumb, dust of the scales, but whether there is any upon which a jury can in any justifiable view find for the party producing it, upon whom the burden of proof is imposed.'' *Connor* v. *Giles, supra.*

For a long time there has been much criticism of the scintilla rule, many claiming that the courts ought to repudiate it. We venture the opinion that courts can not change the rule because it became a part of our fundamental law when our government was formed. It had its origin in the common law, *Gibson* v. *Hunter,* 2 H. Black, 187, 205, containing a lucid discussion of it. Although the rule was long ago abolished in England and in many American states, it is fastened into the procedural jurisprudence in others by constitutional interpretation, placing it beyond the reach of courts. This is true of Ohio, the rule being clearly stated by Ranney, J., in *Ellis* v. *Insurance Co.,* 4 Ohio St., 628, 645. Those who claim the scintilla rule to be obsolescent will do well to advert this decision, and they will conclude that as long as there is some evidence tending to prove the issue, the court is without power to direct a nonsuit, although it may be of the opinion that the verdict must be set aside as against the weight of the evidence.

That was precisely the attitude of the court in this case.

In logic and on principle, however, it is not easy to distinguish the function of court and jury. When the court is asked to direct a verdict in truth it is asked to pass "upon the merits of the action" as the record then stands, and to render judgment that defendant go hence without day.

It seems reasonable to overrule a motion for nonsuit at the close of evidence of plaintiff where it actually tends to prove the issues. Upon renewal of the motion at the close of all the evidence the question is whether plaintiff finally is left with "sufficient evidence" to sustain a verdict found in his favor.

If sufficient evidence as the term is used in the statute as to new trial means what the law requires to support a verdict, viz., a preponderance, there is danger that our logic may lead to a conclusion that it is idle to submit a cause to a jury at all in many cases. But that is where the law places us if a court may only submit a case to the jury when it is of the opinion that there is left a preponderance on the side of the party sustaining the burden; the court would then in fact decide all cases.

A preponderance is the test and measure of the weight of the evidence. If it does not preponderate in plaintiff's favor the weight is not with him. If it is evenly balanced the weight is not with plaintiff.

When the court approaches the duty of deciding a question of nonsuit at the close of all the evidence, its point of view is unlike a consideration of a demurrer to plaintiff's evidence.

On demurrer to all the evidence when there is even slight conflict the court faces questions of credibility and of weight, the determination of both of which is within the exclusive province of the jury.

Strictly considered, at that point of the trial, so long as there is some conflict the court can not grant a nonsuit, as to do so would be to transcend its power, and invade the province of the jury, which is as much a part of the court as is the judge.

This reasoning demonstrates, in a measure, the wisdom of the rule that a court should not set aside a verdict on account of mere difference of opinion between court and jury. It may be also said to disclose the difficulty of applying the rule followed by many decisions that the court should direct a verdict when

it is of the opinion that a verdict, if found, would have to be set aside.

The conclusion is plain under present statutory and constitutional provisions, that the functions and duty of court in passing upon a motion for nonsuit is wholly unlike that in passing on a motion for a new trial. The function of the court upon a motion for a verdict is strictly analogous to a consideration of a demurrer to a petition.

The rules of our practice as herein suggested, however, upon broad and liberal grounds, are not at variance with expressions of opinions by courts departing from the scintilla rule.

It may not be difficult to determine, even when bound by the scintilla rule, whether there is any evidence upon which a jury can, in any justifiable view, find for plaintiff. If there be found in the evidence facts and circumstances free from dispute which indisputably defeat a right of recovery, the plaintiff should be nonsuited.

It has been well settled by one of the brethren of the trial bench that where the only evidence of negligence is an inference drawn from circumstances, and other circumstances are proven from which the inferences of the absence of negligence is a more natural and stronger inference, and the verdict is for the plaintiff upon whom the burden rested, it is the duty of the court to see that the party on whom the burden is cast, sustains that burden, and set aside a verdict, which is in effect based upon the conjecture of the jury that the defendant was negligent. *Hamilton* v. *Railway,* 4 N.P.(N.S.), 249.

We now consider the evidence in this case in the light of the reason and logic stated. The chief point of contention is whether defendant was running its car at an excessive and unlawful rate of speed. The evidence on this point has been stated. On the side of plaintiff it is to the effect that the car was "going pretty fast," it was "going awfully fast"; "about thirty miles an hour."

It is a rule that "any man of average intelligence who sees a moving car   *   *   *   is competent in law to form or express an opinion as to its speed." *Metropolitan Ry.* v. *Blick,* 22 App. D. C., 194.

Indeed "in estimating time, distance, and rapid motion the mass of men are inexpert." *Huntress* v. *Railway*, 66 N. H., 185. See *Baltimore & O. Ry.* v. *Stollz*, 18 C. C., 93; *Detroit & M. Ry.* v. *Steinburg*, 17 Mich., 104; *Hunter* v. *Railway*, 112 N. Y., 371.

While the probative value of such testimony is for the jury, its unsatisfactory character in many cases impose a duty on the court at some stage of the trial.

"The estimate of a witness, especially of a non-expert, of the rate of speed of a moving railway train, is very unsatisfactory proof, and should be received with great caution. If the *res gestae* renders it impossible, or even highly improbable, that the estimate can be or is correct, it should be rejected." *Hoppe* v. *Railway*, 61 Wis., 357. The estimate of speed by the ordinary person is universally regarded as inexact and so inconclusive that their testimony is not deemed to be contradicted, nor their credibility affected by the testimony of others whose opinions are different." *Moore, Facts*, Section 120; *Central of Ga. Ry.* v. *Waxlebaum*, 111 Ga., 812. Such opinions or statements have been held to be mere guess or conjecture, and insufficient to establish the fact. *Moore, Facts*, Section 120; *Smith* v. *Railway*, 187 Pa. St., 451.

"The judgment of witnesses in such matters, formed long after the event, and not based upon anything which specially attracted attention at the time, is rarely to be depended upon. It is always safer to look at the facts as they are known to have occurred and judge from them." *Moore, Facts*, Section 423; *Gladwich Case*, 17 Blatch., 77.

It is judicially considered quite impossible for one approaching an electric car to accurately judge the rate of speed at which a car is going, and that an ordinary person will fail to detect the fact that an approaching car is running at the rate of twenty-five or thirty miles an hour. *Moore, Facts*, Section 425; *Ashley* v. *Traction Co.*, 60 W. Va., 306.

As such opinions depend upon the capacity of the witness, his experience and his opportunity for observation, whether he was specially attentive or indifferently attentive, or excited, should

all be taken into consideration.  *Moore, Facts,* Sections 433, 434, 436, 438.

It is considered that description of speed simply as "fast," "pretty fast," "swift," "high" is to be deemed a fatal vice in the testimony of an interested party.  "When a witness says, therefore, in a given case, that the car ran swiftly, or with speed, he says nothing to the purpose when the injury is as to the negligence in the rate of travel.  Such testimony is altogether too uncertain for judicial action."  *Moore, Facts,* Section 466; *Yingst* v. *Railway,* 167 Pa. St., 438; *Flanagan* v. *Railway,* 163 Pa. St., 102.

So when persons are much excited upon witnessing an accident, and describe the speed "as fast as it could be," "it was pretty fast," "very quick," "ran fast," in the face of the operatives of the car that the speed was moderate, has been held inconclusive and unreliable conclusions and opinions formed during moments of excitement.  *Beisiegel* v. *Railway,* 40 N. Y., 9.

These references to judicial expression are thus given to show the light in which expressions such as appear in the evidence on the side of plaintiff are considered by courts.

Indeed, but one opinion as to speed is given, that by Mrs. Chandler, that the car was going about thirty miles an hour. According to her own testimony her attention was directed to the approaching car coming towards her, just a moment, when the next thing she saw was the terrible scene which shocked her.  The test afterwards made by another which she witnessed, made by comparison with a car which she imagined was going as fast as the one which struck her husband, is entirely too unreliable for judicial action.

"One who gets but a glance at a car or train approaching him nearly head on is not at all well situated to observe accurately the speed."  *Moore, Facts,* Section 434; *Hanlon* v. *Railway,* 118 Wis., 210.

"A mere guess or conjecture respecting the rate of speed was not sufficient to establish it, and this was all his testimony in regard to it amounted to."  *Smith* v. *Railway, supra.*

There is another rule to be applied.  It is that an opinion expressed by an actor, or active participant in an accident re-

sulting in injury who is in charge of the agency causing the same and charged with some duty concerning its manipulations, is entitled to different legal consideration than that of another which is the product of mere recollection.

"Probability of a higher degree of attention and interest gives rise to a presumption of considerable force that a person's recollection of his own act and that of the attendant circumstances is more definite and trustworthy than another's recollection of it; especially if it was an act done in the performance of duty, or the other person's testimony is little more than an expression of opinion or judgment," *Moore, Facts,* Section 783; *Bugbee* v. *Howard,* 32 Ala., 713, 718; *Sanford* v. *Railway,* 136 Pa. St., 84.

Of course it is recognized "on the other hand, the actor is often a witness who is attempting by his own testimony to exonerate himself from a charge of negligence, and this makes him a biased witness, whose memory may not be entirely trustworthy, although such bias would not alone justify a finding that he has corruptly testified to a falsehood." *Moore, Facts,* Section 705.

But aside from Mrs. Chandler's opinion, which is considered to have little, if any, weight, and that of the motorman are the disinterested witnesses, the motorman and conductor on the city car whose testimony corroborate and substantiate that of the motorman. There is no reasonable inference to be drawn from that time within which the car was stopped. There is no evidence on this point further than the bare fact as to where it stopped, and the cross-examination of the superintendent.

Men who are experienced in handling electric cars, such as motormen and conductors, may testify as experts to such matter (*Traver* v. *Railway,* 25 Wash., 225). And some authority is to the effect that only such persons may be qualified to give opinion as to such a matter, as it depends upon knowledge of the special type of car, the condition in which it was in, and the condition of the track. *Kotila* v. *Railway,* 134 Mich., 314; *Schroeder* v. *Transit Co.,* 111 Mo. App., 52; *Philadelphia Trac. Co.* v. *Bernheimer,* 125 Pa. St., 615.

However this may be, it is sufficient to say that there is no testimony on this point further than that mentioned. The jury could not have rendered the verdict on the testimony offered. They could only have speculated on the distance from the station to Parsons avenue, and on the testimony of the motorman that the accident occurred between Markeson and Welch avenues at 10:12. The record does not inform the court what that distance was, nor does it disclose the distance from the above streets to Parsons avenue. The record does not even give the number of city blocks to the place of the injury, nor from there to Parsons avenue.

The court might well have concluded for the reasons stated, and upon the authorities, that plaintiff did not present evidence upon which the jury could, in any justifiable view, find for the plaintiff. Be that as it may, it not being the province of this court to modify the scintilla rule, the finding and judgment is that the verdict is not supported by sufficient evidence and the same is set aside.