DELL MYERS *v.* CHARLESTON TRANSIT CO.

(No. 9742)

Submitted January 29, 1946. Decided March 5, 1946.

*Samuel D. Lopinsky* and *Salisbury, Hackney & Lopinsky,* for plaintiff in error.

*Watts, Poffenbarger & Bowles,* for defendant in error.

KENNA, PRESIDENT:

Dell Myers, defendant in error, brought this action of trespass on the case against Charleston Transit Company, plaintiff in error, to recover damages for the loss of the index, second, and part of the third finger of his right hand, due to the alleged negligent operation by the defendant company of a passenger bus from the City of South Charleston to Charleston. Judgment was entered on a verdict for $5,000.00 in favor of the plaintiff

below and this writ of error was granted upon the petition of the Charleston Transit Company. By appropriate motions the points covered by the assignments of error briefed and argued were properly preserved, and since they turn largely upon the sufficiency of the plaintiff's evidence it is necessary to state what we regard as the material part of the testimony.

The plaintiff at the time of his injury on May 25, 1944, was sixty-one or two years of age, lived on Chandler's Branch and was employed by the State Road Commission at sixty cents per hour. On the morning of the day of the accident he says he didn't feel as well as usual and so decided not to go to work but instead to visit his daughter whom he hadn't seen for some time. He left his home at around nine-thirty in the morning and went to his daughter's apartment on Fourth Avenue where he says he stayed until fifteen or twenty minutes of two, then going to the corner of Patrick Street and Fourth Avenue and there meeting Caleb Milam with whom he was talking when the accident occurred at around two P.M. Myers says that he was waiting for the traffic to clear so that he could cross Fourth Avenue on his way home to Chandler's Branch and was leaning with his back toward the river against a telephone pole on Patrick Street within a few feet of the south corner of that street with Fourth Avenue.

Fourth Avenue is thirty feet wide between curbs, paved with concrete, and begins at Patrick Street, running east or up the Kanawha River. Patrick Street is thirty-two feet wide with concrete paving between curbs and runs north from the bridge across the Kanawha River to the hill.

Myers testified that he was standing on the sidewalk but that he must have been right close to the curb because in rounding the corner from Patrick Street into Fourth Avenue the bus "sideswiped" him and knocked him down; that as he was falling he saw the bus, evidently for the first time, and in attempting to push him-

self away from it came to earth with his right hand over the edge of the curb as the rim on the bus' right rear wheel struck it, cutting off his fingers.

Patrick Lee Miller and Robert Franklin Miller, respectively fourteen and sixteen years of age, corroborate the testimony of Myers concerning the immediate happening though their testimony does not correspond completely in detail. They lived on Fourth Avenue and were employed as pin boys in the Boulevard Bowling Alley and were on their way to work when they stopped at Regas' Market and on their way in saw Myers and Milam sitting on the steps outside. They got a bottle of pop or coca cola each and came outside to drink it when they saw the plaintiff standing with his back to the telephone pole, saw the bus "sideswipe" him, knock him down, turning him around as he fell, with his right hand over the curb so that the back wheel struck his fingers. The testimony of these two witnesses is conflicting as to time and the position of the plaintiff after he fell.

Joe Scott, an employee of the Kelly Axe & Tool Works, who was walking toward the river on Patrick Street, facing the corner of Fourth Avenue, saw Myers and saw the bus turn into Fourth Avenue. He did not see the bus strike Myers nor Myers fall toward the bus. He did see Myers after he was injured.

The police officer on duty, who did not see the accident, and the civil engineer who testified concerning the measurements and introduced a plat drawn to scale of the intersection or corner where the accident occurred, complete the testimony of the plaintiff.

The defendant undertook to show that the plaintiff's fall was directly due to intoxication either without the bus striking him, or because he swayed beyond the curb line toward the bus and collided with it due to his own fault.

Mrs. Zoma Witt testified that Myers had been in her place of business within two doors of the corner of Pat-

rick Street and Fourth Avenue during the entire morning from about nine-thirty until a half hour before the accident occurred; that they had refused to sell him more beer and ordered him out because he had had too much and "could not stand up very good".

Mrs. Theodosia Collias, who was employed at Regas' Grocery, owned and operated by her uncle testified that she saw Myers staggering with another man helping him walk before her place of business a short while before the accident; that at the time of the accident she was opening bottles of coca cola for the Miller boys and that they must have been in the store at some point because of that fact. An objection to her testimony as conjectural was sustained, after which the witness stated that they were in the store, the latter statement not being stricken.

Paul Bedell testified that he saw Myers a short while before the accident and that he was very drunk as he passed him, going as far as the grocery store on the corner when he fell and was helped to his feet by a friend who came out of the grocery store. Bedell did not see the accident.

William C. Games, a driver for the Greyhound Company, testified that he was sitting to the right of the center of the rear seat of the bus, the speed of which did not exceed ten miles per hour as it approached the corner; that he saw the plaintiff standing with another man at the corner of Fourth Avenue and Patrick Street; that "they were moving about; more of a stagger than anything", and that after the driver of the bus had passed them in turning the corner, the plaintiff, who was standing with his back to the bus, staggered into its side just in front of the rear wheel after the driver had "gotten by", dropping below the window and out of his sight. Mr. Games stated on cross examination that he first saw the plaintiff when he, Games, was a bus length from him, and that the length of a bus would be possibly twenty-eight or thirty feet.

Eugene Evans, a seventeen-year-old young man engaged in preaching, testified that he saw Myers fall against the bus between the rear door and the rear wheel and that in his opinion Myers was then drunk. Evans also stated that the man with Myers tried to grab him as he fell, but was unsuccessful.

Ray Probst testified that he saw Myers at the time of the accident and the man with him was holding him up and "trying to pull him up the sidewalk"; that Myers pulled away and fell as the bus rounded the corner. On cross examination he stated that he did not see Myers "hit the sidewalk" in falling and that he did not know whether Myers hit the bus or the bus hit him because the witness was across Fourth Avenue from the corner Myers was on and that in turning up Fourth Avenue the bus obstructed his vision.

The driver of the bus, B. Earl Graham, testified that he was driving a forty-passenger bus that is about thirty feet long, on the sides of which there is no projection with the exception of a rubber fender over the rear wheels that extends out beyond the body about an inch; that in approaching Fourth Avenue he had reduced the bus' speed to between six and seven miles per hour; that he did not see the plaintiff standing on the corner because he was devoting his attention to another bus coming down Fourth Avenue and to the other traffic at the corner; that in making the turn he did not cut to the right until the front of the bus had passed the corner of the curb by about eight feet; that after that was done he stopped the bus in the usual place on Fourth Avenue and did not know that Myers had been injured until so informed by a person boarding the bus and that he then became so upset that he did not think to take the names of the passengers on the bus as witnesses although the bus was filled to capacity. Upon being recalled he stated that the bus was equipped with air brakes and that it could be stopped almost instantly at the speed it was making as it rounded the corner.

The assignments of error are, first, that the court should have directed a verdict for the defendant because the physical facts disprove plaintiff's theory; second, that the testimony of Mrs. Collias was either improperly stricken out or limited; third, that plaintiff's instructions numbers one and two are erroneous; fourth, that defendant's instructions numbers three, four and six should have been given; and five, that the verdict is excessive in amount.

The first assignment seems based upon the theory that viewing the plaintiff's testimony and supposing that the bus had "sideswiped" him he would have been projected away from the bus and not toward it. We do not believe that would be the unavoidable result of the application of a well known natural law so that the so called "physical facts" require the case's treatment from that point of view. However, a motion to direct in this case necessarily involves the question of whether there is a showing of primary negligence on the part of the defendant and that question, we believe, rests upon whether plaintiff's instruction number one correctly states the law and, if it does, whether there was sufficient evidence to support it. The instruction in question tells the jury that it was the duty of the defendant in approaching the intersection of Fourth Avenue and Patrick Street to use due and reasonable care toward persons standing on or near the curb or about to cross the street; that if they believe that the defendant failed to maintain a proper lookout or to use such care the jury may find for the plaintiff, if they believe that failure was the proximate cause of plaintiff's injury. The bus driver had stated that he did not see Myers standing on the corner as he was giving his attention to traffic. The testimony that no part of the bus extended over the curb line as it rounded the corner is not directly contradicted, although Myers and the two Miller boys testified it "sideswiped" Myers while he was standing on the curb of the sidewalk. The plaintiff in error cites *McCune, Infant,* v. *Crawley Transportation Company,* 120 W. Va. 301, 198 S. E. 516,

and *Aliff, Admr., Etc.* v. *Berryman*, 111 W. Va. 103, 160 S. E. 864, as holding that the driver of a motor vehicle is not obliged to maintain a lookout for persons on the sidewalk or off of the traveled way of a street or highway, and the defendant in error counters by citing 5 Am. Jur. 599, Section 168, to the effect that drivers of motor vehicles must be especially watchful in anticipation of the presence of others in places where men, women and children are liable to be crossing, such as corners and street intersections. Neither the *McCune* nor the *Aliff* case is in point in our opinion because they each involve injuries received upon the traveled part of a street or highway and the duty of defendant to anticipate plaintiff's presence there. Here the plaintiff was upon the sidewalk when injured, his amended declaration alleging: "* * * the plaintiff, a pedestrian, was standing on the sidewalk at the corner of Patrick Street and Fourth Avenue, facing Patrick Street, and was near a telephone pole at the corner of said intersection, which said pole is imbedded in the sidewalk, and was in the use of due care and caution for his safety and was without negligence * * *". The respective duties and rights are quite different under the two sets of circumstances. The declaration does not allege that Myers was waiting for a chance to cross the street, although he does so testify. He says further that he was standing with his back against the telephone pole and to the bus. As a pedestrian about to cross at an intersection his duty to maintain a lookout was the same as that of the bus driver, treating this dead end corner as an intersection. *Ashley, Administratrix* v. *Traction Co.*, 60 W. Va. 306, 55 S. E. 1016. However, since the allegations as well as the evidence are to the effect that Myers was struck while on the sidewalk, we are of the opinion that the averment that he was a pedestrian may be disregarded as surplusage. If he was struck while on the sidewalk he owed the defendant no duty to maintain a lookout for its bus where, under the circumstances, it had no right to be. The testimony of Myers and the two Miller boys is that he was "sideswiped" by the bus while on the sidewalk.

The evidence of the defendant is to the effect that no part of its bus invaded the sidewalk. The jury believed the plaintiff's witnesses. Plaintiff's instruction number one does not conform to that theory of recovery, but is based upon the theory that the plaintiff was struck while on the traveled part of the street. Its giving was therefore erroneous.

Assignment number two dealing with the testimony of Mrs. Collias we think is not well taken for the reason that Mrs. Collias' final statement that the two Miller boys were in the store was not stricken out.

Under the third assignment of error we have discussed plaintiff's instruction number one, leaving plaintiff's instruction number two to be considered. That instruction treats of the doctrine of last clear chance and while we believe that its statement of the rule is fatally defective, because the knowledge or discovery of the plaintiff's peril by the defendant is not clearly stated, we do not reach that question because we are of the opinion that under the circumstances shown by the evidence the principle does not apply. Plaintiff was on the sidewalk where he says he was struck by the right side of defendant's bus. The driver's platform had passed him. He was not struck while in or attempting to cross the street. He was not in a position of peril until the bus started to turn the corner and then there was no appreciable period for the driver to realize and act upon the knowledge of plaintiff's danger. *Milby* v. *Diggs*, 118 W. Va. 56, 189 S. E. 107. The plaintiff's contributory negligence is an element of the doctrine. If he remained upon the sidewalk at all times, it is difficult to see how a position of peril could result from his fault. We do not believe that the testimony of the witness Games justifies the conclusion that the bus was a bus length away from Myers at a time his dangerous situation should have been realized. Games stated that he first saw Myers when he, Games, was about a bus length away. Games was on the back seat of the bus and consequently his statement placed Myers about even with

the front of the bus when first seen by him. We think that an instruction based upon the doctrine of last clear chance should not have been given.

The fourth assignment of error is the refusal to give defendant's instructions three, four and six. The proffered instructions three and four both deal with the question of the plaintiff's intoxication and the manner in which intoxication would effect contributory negligence.

Defendant's instruction number three tells the jury that if they believe from the evidence that the plaintiff was intoxicated at the time of his injury he was prima facie guilty of contributory negligence and counsel for plaintiff in error cites the case of *Oldfield* v. *Woodall*, 113 W. Va. 35; 166 S. E. 691, as supporting the instruction, on the theory that intoxication in a public place is, by statute, a misdemeanor. The cited case holds that the disregard of a statute is prima facie negligence *when* it is the natural and proximate cause of an injury. We are of the opinion that since the instruction was based upon intoxication under all circumstances and without qualification it was properly refused.

We believe that although instruction four is differently phrased and could perhaps logically be distinguished from defendant's instruction number two which was given, that nevertheless it deals adequately with the same material subject matter and therefore that its refusal did not constitute prejudicial error.

The objection to defendant's instruction number six, based entirely upon the fact that it is binding, we believe should not have been sustained. Its effect is only to charge the plaintiff with the exercise of reasonable care and to tell the jury that if he could in that way have avoided the bus "sideswiping" him and failed to do so, and if that failure contributed proximately to his injuries, he cannot recover. We believe that this instruction is sound under the defendant's theory of the case but viewed from the standpoint that the plaintiff was

"sideswiped" while on the sidewalk and entirely within the outside curb line, we do not believe that he then owed the duty to the defendant to maintain a lookout for its approaching bus. That duty he owed it only in the event he intended to enter the traveled part of the street or to extend a part of his body beyond the outside curb line. If the defendant in operating the bus extended its side beyond the outside curb line and so over the sidewalk, the plaintiff was not guilty of contributory negligence in not discovering that fact, although he might have been if, after the discovery of that fact by him, he had had a reasonable opportunity to avoid injury and had neglected to do. so.

Since the verdict is to be set aside on other grounds we do not believe that assignment of error number five based on its alleged excessiveness is reached and hence should not be discussed.

For the foregoing reasons the judgment of the Circuit Court of Kanawha County is reversed, the verdict set aside and a new trial awarded.

*Reversed and remanded.*