Julia Benoit, an Infant, by Peter Benoit, Guardian ad Litem, Respondent, v. The Troy and Lansingburgh Railroad Company, Appellant.

1. Domestic Animals — Vicious Propensity — Scienter — Liability of Owner.   The fact that a pair of ordinarily manageable and gentle horses on one occasion broke from their driver and ran away on a public street, through fright naturally following from the conduct of third parties, does not of itself constitute a vicious propensity: nor does knowledge thereof render their owner liable, in the absence of negligence, if he thereafter uses them and they again run away from the same cause, and injure another.

2. Negligence — Driving Horses — Error of Judgment.   If the driver of horses, in exercising his best judgment in directing their course in the emergency arising from their commencing to run away, errs, it is an error of judgment only, and is not ground for an imputation of negligence.

*Benoit* v. *Troy & L. R. R. Co.*, 9 App. Div. 622, reversed.

(Argued October 14, 1897; decided November 23, 1897.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered October 5, 1896, which affirmed (by a non-unanimous decision) a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion to set aside the verdict and for a new trial.

This action was brought to recover damages for personal injuries alleged to have been caused by the negligence of defendant.   The plaintiff was injured by the running away of a team of horses belonging to defendant, driven by its servant upon a street in the city of Cohoes.   The complaint alleged that the injuries were the result of a defective or insufficient means of control of the horses, or of the habit of running away — a habit then well known to defendant — or of the negligence of the driver.

Further facts appear in the opinion.

*R. A. Parmenter* for appellant.   The runaway was not from habit or one caused by the viciousness of the animals, and, therefore, the defendant was not legally responsible to

the plaintiff for the resultant injury to her on the ground of negligence on its part. The accident was a mere casualty for which no person is legally responsible. (*Quinlan* v. *S. A. R. R. Co.*, 4 Daly, 487; *Gottwald* v. *Bernheimer*, 6 Daly, 212; *Gray* v. *Tompkins*, 40 N. Y. S. R. 546; *Unger* v. *F. S. S. & G. S. F. R. R. Co.*, 51 N. Y. 497; *Button* v. *Frink*, 51 Conn. 342; *Cotton* v. *Wood*, 8 C. B. [N. S.] 566; *Hammock* v. *White*, 11 C. B. [N. S.] 588; *Cox* v. *Brundage*, 13 C. B. [N. S.] 430; *Goodman* v. *Taylor*, 5 C. & P. 410; *Bigelow* v. *Reed*, 51 Me. 325.) The trial judge committed an error in refusing to instruct the jury that they had the power and the right to disregard the testimony of Peter Benoit by reason of his interest in the event of the action, although in no respect contradicted by any other witness. (*M. R. R. Co.* v. *M. R. Co.*, 11 Daly, 378; *Wohlfahrt* v. *Beckert*, 92 N. Y. 497; *Elwood* v. *W. U. T. Co.*, 45 N. Y. 549; *Kavanagh* v. *Wilson*, 70 N. Y. 179; *Gildersleeve* v. *Landon*, 73 N. Y. 610; *Kearney* v. *Mayor, etc.*, 92 N. Y. 621; *B. C. T. R. R. Co.* v. *Strong*, 75 N. Y. 591.)

*J. F. Crawford* for respondent. Without regard to whether these horses had or had not run away previously to the first runaway admitted by Ladrick, or whether on that or on the subsequent occasion when plaintiff was injured, these horses started to run with or without cause, and irrespective of any question as to the negligence of the driver, a clear case of negligence and liability of defendant for this injury is established by the evidence. (*Kitridge* v. *Elliot*, 16 N. H. 77; *Smith* v. *Pelah*, 2 Strange, 1264; *Burch* v. *Blackburn*, 4 C. & P. 297; *Arnold* v. *Norton*, 25 Conn. 92; *Keenan* v. *G. P. Co.*, 12 N. Y. S. R. 617; *Helmke* v. *Stetler*, 52 N. Y. S. R. 528; *Slattery* v. *Schwannecke*, 7 N. Y. S. R. 430; *Reed* v. *S. E. Co.*, 95 Ga. 108.) Defendant's driver was guilty of negligence in that having the horses within his control, so far as their direction was concerned, as they came down the street, on the occasion of this injury, he voluntarily surrendered it, and all further control over them by hauling them to the north

sidewalk and dashing the fragile structure, on which he was riding, against the curbstone, where it was certain to be wrecked. (*Cadwell* v. *Arnheim*, 81 Hun, 39.)

ANDREWS, Ch. J.   The case was submitted to the jury upon two main propositions : *First,* whether the horses had the vicious propensity to run away, known to the defendant, and, *second,* whether Ladrick, the driver, was negligent in the management of the horses after they commenced to run, in reining them over to the left side of the street and bringing the stoneboat to which they were attached into collision with the street curb, thereby wrenching the front plank of the stoneboat from its fastenings, and freeing the horses so as to permit them to run on their way across the canal bridge, dragging the pole and whiffletrees where they collided with the plaintiff, causing the injury in question.   The court charged that if the jury should find either of these propositions in the affirmative, the plaintiff was entitled to a verdict.   We are of opinion that neither of them was sustained by evidence, and that the exceptions taken by the defendant to their submission to the jury were well taken.   The general principles which govern the liability of the owner of domestic animals for personal injury caused by them are well settled.   The owner is not responsible for an injury to another, caused by kicking, biting or other vicious propensity of such animal, unless the dangerous character. of the animal was known to the owner.   Such knowledge may be brought home to him by proof of prior acts of a similar kind to that charged in the complaint committed by the animal of which the owner · had notice, or it may be imputed from its known dangerous character, as in the case of a ferocious Siberian bloodhound, kept by the owner for the protection of his premises, but allowed to be at large. (*Vrooman* v. *Lawyer,* 13 John. 339 ; *Van Leuven* v. *Lyke,* 1 N. Y. 515 ; *Muller* v. *McKesson,* 73 id. 195 ; *Spring Co.* v. *Edgar,* 99 U. S. 645.)   In the absence of such knowledge or notice, an injury caused by such animal gives no right of action, but when the vicious habit or charac-

ter of the animal becomes known to the owner, and he there-
after continues to keep the animal, he keeps it at his peril and
renders himself liable for any subsequent injury to another
caused by its viciousness. This doctrine is founded on prin-
ciples of humanity and the solicitude of the law for the pro-
tection of human life. The cases are frequent where actions
have been maintained for injuries resulting from the bite of
dogs, the biting or kicking of horses, goring by bulls, or
other animals. It was sought to apply the principle upon
which these actions have been maintained, and to hold the
owner to the same rule of responsibility in a case where the
injury was caused by a collision with horses which had escaped
from the control of their driver on a public street, and which
on a prior occasion to the knowledge of the owner had run
away. It is conceded that if the horses had run away for the
first time on the occasion in question, there could be no recov-
ery, because there would then be an absence of what is called
*scienter*, or, in other words, of prior knowledge of the pro-
pensity of the horses to run away. But this element is
claimed to have been furnished by proof that about ten days
prior to the accident in question, the horses had run away
under similar circumstances, while being driven by the same
driver, of which fact the company had notice. There is a
suggestion in the evidence of the father of the plaintiff that
on another occasion, prior to the one last mentioned, the horses
ran away. But it is plain from the evidence of Ladrick, the
plaintiff's witness, that the occasion mentioned by Benoit was
the same one mentioned by the other witnesses, and that the
horses had run away but once before the time when the injury
happened. It was submitted to the jury to find from the fact
that the horses had run away on this prior occasion, that
they had this vicious propensity, and the court charged that if
they found that this propensity existed and was known to the
defendant, the defendant thereafter used the horses at its
peril. We think the rule laid down by the court on the
trial extends beyond reasonable limits the liability of owners
of horses, and imposes a burden not sanctioned by any case

which has come to our notice. The use of horses is very
general. That they may on an occasion escape from the
control of their driver and run away is not an uncommon
experience. Must the owner, after such an occasion, stop
using them, except under the onerous burden of absolute
liability, if they shall run away a second time and cause
injury? It may be admitted, as suggested on the trial,
that horses that have once run away are less safe thereafter.
This may bear upon the degree of care which should be exer-
cised by the owner in their management. But does it place
the horses under the ban of the law and make the owner liable,
in the absence of negligence, if he uses them thereafter, and
they again run away and cause injury? It may very well be
that horses may be so unmanageable that they cannot be
driven in the public streets without manifest danger. If this
was established in a particular case, we see no reason why
their use by the owner, with knowledge of their vicious char-
acter, should not make him responsible for any consequent
injury. But the horses which caused the injury in this case
were eight or nine years old, had been driven for several years
on street cars of the defendant, had been kind and gentle,
and the only departure from their peaceable habit and
behavior before the occasion in question was when they ran
away about ten days before. The circumstances show
that on the former occasion they started from fright,
when passing along a street in which a large number of
school boys were hallooing and throwing snowballs, and
Ladrick, the driver, who was sitting on the sled or stoneboat
to which the horses were attached, guided them towards the
bridge, but his eyes becoming filled with mud and slush, he
was unable to see an approaching vehicle, and the sled collid-
ing with it, he was thrown off and the horses made their way
to the barn and then stopped. There was nothing in this
transaction which would indicate to a prudent man that the
horses were of a vicious or unmanageable disposition, or that
they could not be safely driven thereafter. On the second
occasion when they ran away, which was the occasion in ques-

tion, they were going on a walk, passing the school house where fifty or sixty boys as before were engaged in shouting and throwing snowballs, one of which hit the off horse, which started to run and the other followed him.   The striking of the stoneboat against the street curb detached the horses, and escaping from the driver they ran over the bridge towards the barn, and on the bridge the horses or the pole struck the plaintiff and severely injured her.   For this unfortunate accident the defendant is not, we think, legally responsible within the principles of the cases which establish liability for the use or keeping of dangerous or vicious animals.   The cause of the running away of the horses on both occasions was fright, naturally following from the conduct of third persons, for whose acts the defendant was not responsible, and the fact that defendant knew of the circumstances of the first runaway did not, we think, justify the submission to the jury of the question whether the horses were vicious or dangerous, or unsafe to be used in driving along the street.

The exception to the submission to the jury of the second proposition mentioned, namely, the question of the negligence of the driver in his management of the horses after they commenced to run, was also, as we have intimated, well taken.   The alleged negligence is predicated upon the fact that he reined the horses from the right to the left-hand side of the street and thereby caused the stoneboat to strike the curb, breaking the fastenings which attached the horses and allowing them to get out of the control of Ladrick, the driver.   It is possible that if Ladrick had kept the horses in the middle of the street the injury to the plaintiff would not have happened.   But it is plain from the evidence that he was, in the emergency which existed, exercising his best judgment in directing the course of the horses, and if he erred it was an error of judgment only, and is not ground for an imputation of negligence.

The court was asked to charge that the jury had the right to disregard the testimony of Benoit, the plaintiff's father, by reason of his interest, although not contradicted by other witnesses.   It appeared that he had brought an action, which was

pending, for the loss of services of the plaintiff, founded on the same transaction. The court refused to charge this request, but charged that in weighing his testimony his relationship to the plaintiff could be considered by the jury, and they could give his testimony such consideration and weight as they should deem it under all the circumstances entitled to. It is not necessary to consider whether, in connection with the charge made, there was any error in the refusal to charge the request.

We think the judgment should be reversed and a new trial granted.

All concur.

Judgment reversed.