(107 App. Div. 289.)

### CONWAY v. RHEIMS.

(Supreme Court, Appellate Division, Second Department. August 31, 1905.)

1. MUNICIPAL CORPORATIONS—USE OF STREETS—TRAINING UNBROKEN HORSE—INJURIES TO PERSON ON STREET.

Evidence in an action for injuries inflicted by a horse while being driven on a street *held* to support a finding of actionable negligence on the owner's part, arising from his act in attempting to drive on the streets of a city an unbroken horse.

2. SAME—UNBROKEN HORSE—DUTY OF OWNER IN TRAINING.

A purchaser of unbroken horses is bound to apprehend the exhibition of want of restraint during process of training, whatever assurances of docility may have accompanied the sale; and, when it is made apparent on a trial that a horse is not kind and gentle, he must exercise caution commensurate with the danger.

Appeal from Trial Term, Kings County.

Action by Hugh Conway against Cyrus Rheims. From a judgment for plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, RICH, and MILLER, JJ.

James Troy, for appellant.
Frederick S. Martyn, for respondent.

HIRSCHBERG, P. J. On the argument of this appeal I was inclined to the view that there was no sufficient proof of the defendant's negligence, inasmuch as there appeared to be no direct evidence tending to establish that the defendant or his servants knew, or should have known, that the horse was a dangerous one to drive upon the city streets. Subsequent study of the case has convinced me, however, that the learned trial justice properly submitted the question to the jury for disposition as one of fact. The plaintiff was injured, without fault on his part, by a horse in charge of two of the defendant's servants while they were driving or exercising it on Liberty street in the borough of Brooklyn; the horse becoming unmanageable under circumstances which might fairly be regarded as admonishing them that the event was reasonably to be anticipated.

The defendant is a dealer in horses—has been all his life—and as such was thoroughly familiar with their habits and dispositions. The horse which occasioned the accident was one of a car load which he had purchased in Pennsylvania a few days before the occurrence complained of. The horse was a large one, young and green, had never been fully shod until after his purchase by the defendant, and at the time of the injury to the plaintiff was being driven for training or exercise apparently for the first time since his purchase, although he had been previously exhibited to a prospective purchaser, when it is claimed he behaved well and properly. The defendant's stables are on Liberty street, and his servants were exercising the horse by driving him up and down the block. According to their evidence the horse acted all the time in an en-

tirely docile and gentle manner until just before the accident, when he became frightened by the flapping curtain of a passing express wagon, got beyond their control, ran upon the sidewalk, got one leg over the shaft, and, as they, jumping out of the wagon, endeavored, with the aid of a bystander, to hold him by the head, broke away from them, and ran into the street again, and there into the plaintiff, who was then about to mount his wagon, standing near the curb. The learned trial justice charged the jury that, if the accident occurred in the way these witnesses said it did, there could be no recovery. But the evidence given by the plaintiff and on his behalf was very different, and it must be assumed that the jury accepted it as true. According to that evidence the horse was driven up and down the block for a period of about 20 minutes, manifesting all the time extreme nervousness and fright, if not actual viciousness, constantly plunging, jumping, kicking, prancing, and rearing, going from one side of the street to the other in a very unruly manner, until finally, without any apparent cause to specially frighten him, he broke for the sidewalk, throwing one of the drivers out of the wagon, and acting uncontrollably in spite of all the bystander and drivers could do, until he ran into the plaintiff and inflicted the injury as stated. If this evidence furnishes the true history of the occurrence, it cannot be said as matter of law that the defendant's servants exercised reasonable care in keeping the horse so long a time upon the street while he was exhibiting such continuous manifestations of a fractious and unmanageable nature. On the contrary, the fair inference from this evidence is that the behavior of the horse was such as was well calculated to inform a driver of competent skill and experience that it was unsafe to drive him upon the streets without special precaution to avoid possible mischief.

It cannot be doubted that the defendant owed some duty of caution to the public when trying a green and unknown horse upon the street. Indeed, in the obvious expectation that trouble would be likely to occur when green horses were being driven for the first time, he had told his men that, if a new horse became fractious, they should not persist in driving him in single harness, but should take him to the stable and hitch him double with an old horse. This rule his servants wholly disregarded on the occasion in question; but, aside from that fact, I think the jury could properly say that ordinary care required that they should have taken the horse to the stable before he got beyond their power and control. It seems impossible that they, if in the possession of average skill, could not have foreseen, in the course of 20 minutes of trial, for the purpose largely of ascertaining whether he was safe in harness, during all which time his unruly temper was displayed, that he would ultimately break the bounds of management, to the possible injury of persons lawfully on the street, and, if so, their conduct was certainly lacking in ordinary care and prudence. The case is very different from those wherein a horse which has proved tractable for years suddenly displays some vicious or dangerous propensity. In such cases it is necessary to prove a scienter as a condition precedent

to a recovery for damages which may have been inflicted.   But the purchaser of green horses by the car load is bound to apprehend the occasional exhibition of infirmities of disposition or want of restraint during the process of training, whatever assurances of docility may have accompanied the sale; and, when it is made apparent upon a trial that one of the number is not kind and gentle, it is not unreasonable to require a degree of caution in handling him somewhat commensurate with the danger incident to the situation. There is no difference in legal effect between actual knowledge of dangerous traits and circumstances which naturally suggest the likelihood of their existence.   As was said by Chief Judge Andrews, in Benoit v. Troy & Lansingburgh R. R. Co., 154 N. Y. 223, 227, 48 N. E. 524, 525:

"It may very well be that horses may be so unmanageable that they cannot be driven in the public streets without manifest danger.   If this was established in a particular case, we see no reason why their use by the owner, with knowledge of their vicious character, should not make him responsible for any consequent injury."

In Cadwell v. Arnheim, 152 N. Y. 182, 189, 46 N. E. 310, 312, Judge Gray said:

"There is no rule of law which compels a person driving horses upon a highway absolutely to keep them under control.   He is bound only to exercise that reasonable degree of diligence and care which a man of ordinary prudence might be expected to exercise under the same circumstances.   If the servant of the master is driving, the latter is, of course, responsible for the omission by his servant of the diligence and care exacted by the rule."

Tested by this rule, I think it was for the jury to say as a fact whether the defendant's servants acted with reasonable diligence and care in continuing to drive the horse up and down the block until the apparently inevitable crisis came, and whether ordinary vigilance would not have sooner admonished them that persistence in the attempt to subdue him in the public street without some customary adventitious aid would result in the animal finally getting the best of them, to the injury of others.

There are errors in ruling charged by the appellant, but none which compel a reversal.   The judgment and order should be affirmed.

Judgment and order affirmed, with costs.   All concur.