# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 28
Marsha Hewitt,
        Appellant,
    v.
Palmer Veterinary Clinic, PC,
        Respondent,
et al.,
        Defendant.

Mark Schneider, for appellant.
Judith Aumand, for respondent.
New York State Trial Lawyers Association; New York State Academy of Trial Lawyers;
Defense Association of New York, Inc., amici curiae.

STEIN, J.:

Defendant Palmer Veterinary Clinic, PC treated Vanilla, a dog, for a paw injury at its clinic. That same day, plaintiff Marsha Hewitt brought her cat to the clinic for an examination. As plaintiff waited in the reception area, a veterinarian returned Vanilla to her owner in the waiting room; the dog had just undergone a medical procedure to remove a broken toenail. At some point after the veterinarian handed Vanilla's leash back to her

- 1 -

owner, Vanilla saw plaintiff's cat in its carrier, slipped her collar and—in an apparent attempt to reach the cat—jumped at plaintiff from behind, grabbing her ponytail.

Several months later, plaintiff commenced the instant action against Palmer, alleging that she suffered injuries as a result of the incident.[1]  As relevant here, the complaint alleged that Palmer had a duty to provide a safe waiting room, that Palmer breached that duty by failing to exercise due care and by bringing an "agitated, distressed" dog into the waiting area, and that Palmer knew Vanilla had vicious propensities and was in an agitated and aggressive state.  Palmer answered, generally denying the allegations and asserting various affirmative defenses, including that the clinic was entitled to have any liability apportioned between itself and the dog's owner under CPLR article 16.

Plaintiff subsequently filed supplemental bills of particulars, wherein she alleged that the clinic was negligent in bringing an agitated and aggressive dog into the waiting room and for failing to adjust the dog's collar to prevent it from getting loose.  She also alleged—for the first time—that Palmer was negligent "in not giving an effective pain medication and/or anesthesia to the dog" and "in not following the standard of care [for] dogs after surgery."  Thereafter, plaintiff moved to strike Palmer's CPLR article 16 defense, and Palmer cross-moved to strike plaintiff's supplemental bills of particulars.

Supreme Court agreed with Palmer that plaintiff's allegations regarding the lack of anesthesia and the alleged failure to follow the accepted standard of care for surgery

---

[1]  The dog's owner originally also was named as a defendant in the action, but the parties stipulated to discontinue the action against the owner, without prejudice to the clinic's apportionment defense.

"expand[ed] the theory for recovery based on the medical care that Palmer rendered to the dog, for which there was no notice in the [c]omplaint." Thus, Supreme Court struck those portions of the supplemental bills of particulars and denied the remainder of Palmer's motion. In addition, Supreme Court denied plaintiff's request to strike Palmer's apportionment defense.

Palmer eventually moved for summary judgment dismissing plaintiff's complaint in its entirety, asserting that it had no prior knowledge of Vanilla's vicious propensities and that such knowledge was a condition predicate to its liability. In support of its motion, Palmer proffered excerpts from the depositions of the veterinarian that treated Vanilla, the clinic's manager, the dog's owner, and plaintiff herself. Palmer asserted that these materials demonstrated that it lacked any notice of Vanilla's alleged vicious propensities.

Plaintiff opposed Palmer's motion for summary judgment and cross-moved for partial summary judgment, arguing that Palmer could be held liable in negligence despite a lack of knowledge of Vanilla's vicious propensities. In support of her motion, plaintiff submitted an affidavit from a veterinary behaviorist and anesthesiologist, who opined that the incident was foreseeable and avoidable through various measures and that Palmer failed to use due care to prevent plaintiff's injury. In response, Palmer submitted an affidavit by its veterinarian majority owner, who asserted that Vanilla's treatment and discharge did not deviate from the accepted standard of care.

Supreme Court granted Palmer's motion for summary judgment, reasoning that Palmer's liability was contingent upon it having had notice of vicious propensities in the same manner as that of a dog owner. Upon plaintiff's appeal, the Appellate Division

affirmed, with one Justice dissenting in part (167 AD3d 1120 [3d Dept 2018]). The Appellate Division concluded that Palmer could not be held liable without notice of an animal's vicious propensities, relying on our precedent dismissing claims against animal owners in the absence of proof of such notice (*see generally Doerr v Goldsmith*, 25 NY3d 1114, 1116 [2015]; *Bard v Jahnke*, 6 NY3d 592, 599 [2006]; *Collier v Zambito*, 1 NY3d 444, 446 [2004]). The Appellate Division also rejected plaintiff's additional claims that the court erred by striking certain allegations from her bills of particulars and declining to strike Palmer's apportionment defense. We granted plaintiff leave to appeal, and now modify the order below by denying Palmer's motion for summary judgment.

Plaintiff does not dispute that, under existing precedent, an owner of a dog may be liable for injuries caused by that animal only when the owner had or should have had knowledge of the animal's vicious propensities (*see Collier*, 1 NY3d at 446). "Once such knowledge is established, an owner faces strict liability for the harm the animal causes as a result of those propensities" (*id.* at 448). We have explained that an "[o]wner's liability is determined solely by application of the [vicious propensity] rule," declining to permit a parallel negligence claim in such context (*Bard*, 6 NY3d at 599; *see Petrone v Fernandez*, 12 NY3d 546, 550 [2009]). Neither party in this case has asked us to overrule *Bard*, nor is that line of precedent concerning animal owners directly implicated here.[2] Plaintiff argues,

---

[2] We need not comment on the concurrence's description of *Bard v Jahnke* (6 NY3d 592, 599 [2006]) or other precedent relating to the liability of domestic animal owners because, as our concurring colleague acknowledges, this appeal does not involve a dog owner and plaintiff does not seek to hold Palmer strictly liable.

however, that this rule does not—and should not—apply to Palmer, a veterinary clinic. We agree.

The vicious propensity notice rule has been applied to animal owners who are held to a strict liability standard, as well as to certain non-pet-owners—such as landlords who rent to pet owners—under a negligence standard (*see Strunk v Zoltanski*, 62 NY2d 572 [1984]). However, we have recognized that other competing policies and contemporary social expectations may be at play in certain instances where domestic animals cause injuries. For example, we held that the owner of a farm animal "may be liable under ordinary tort-law principles" when that farm animal is allowed to stray from the property on which it is kept (*Hastings v Sauve*, 21 NY3d 122, 125-126 [2013]).

It is undisputed that Palmer owed a duty of care to plaintiff—a client in its waiting room. Palmer is a veterinary clinic, whose agents have specialized knowledge relating to animal behavior and the treatment of animals who may be ill, injured, in pain, or otherwise distressed. An animal in a veterinary office may experience various stressors—in addition to illness or pain—including the potential absence of its owner and exposure to unfamiliar people, animals, and surroundings. Moreover, veterinarians or other agents of a veterinary practice may—either unavoidably in the course of treatment, or otherwise—create circumstances that give rise to a substantial risk of aggressive behavior. Indeed, here, a veterinarian introduced Vanilla into a purportedly crowded waiting room, where the dog was in close proximity to strangers and their pets—allegedly creating a volatile environment for an animal that had just undergone a medical procedure and may have been in pain. Palmer is in the business of treating animals and employs veterinarians equipped

with specialized knowledge and experience concerning animal behavior—who, in turn, may be aware of, or may create, stressors giving rise to a substantial risk of aggressive behavior. With this knowledge, veterinary clinics are uniquely well-equipped to anticipate and guard against the risk of aggressive animal behavior that may occur in their practices—an environment over which they have substantial control, and which potentially may be designed to mitigate this risk.

Therefore, we conclude that Palmer does not need the protection afforded by the vicious propensities notice requirement, and the absence of such notice here does not warrant dismissal of plaintiff's claim. To be sure, "[w]e do not intend to suggest that [Palmer] would be subject to the same strict liability" as the owner of a domestic animal (*Strunk*, 62 NY2d at 575-576). However, we are satisfied that, under the circumstances presented here, a negligence claim may lie despite Palmer's lack of notice of Vanilla's vicious propensities. Furthermore, viewing the record in the light most favorable to plaintiff, as we must (*see Vega v Restani Const. Corp.*, 18 NY3d 499, 503 [2012]), questions of fact exist as to whether the alleged injury to plaintiff was foreseeable, and whether Palmer took reasonable steps to discharge its duty of care. Thus, neither party was entitled to summary judgment.

Addressing plaintiff's remaining arguments, we are unpersuaded that the courts erred by striking those portions of plaintiff's supplemental bills of particulars alleging that Palmer was negligent based on a purported failure to use anesthesia or otherwise follow the standard of care in its treatment of Vanilla. Those allegations, raised for the first time several years after commencement of the action, introduced a new theory of liability into

the case relating to Palmer's medical treatment of Vanilla and the standard of care owed to the patient dog and its owner, as compared with the duty that Palmer owed to plaintiff. Palmer was not on notice of these claims based upon the original allegations of the complaint and, on this record, the striking of such allegations did not constitute an abuse of discretion (*cf. Davis v South Nassau Communities Hosp.*, 26 NY3d 563, 580 [2015]; *see* CPLR 3043 [b], [c]; *Schonbrun v DeLuke*, 160 AD3d 1100, 1101 [3d Dept 2018]; *Dalrymple v Koka*, 295 AD2d 469, 469 [2d Dept 2002]).  Finally, plaintiff's argument that Palmer's apportionment defense should have been stricken lacks merit (*see* CPLR 1601 [1]; *Rangolan v County of Nassau*, 96 NY2d 42, 45 [2001]).

Accordingly, the order of the Appellate Division should be modified, without costs, by denying defendant's motion for summary judgment and, as so modified, affirmed.

WILSON, J. (concurring in result):

From time immemorial, humans have domesticated animals. Dogs may have domesticated themselves (and in the process, helped us humans to domesticate ourselves) (*see* Darcy F. Morey & Rujana Jeger, *From Wolf to Dog: Late Pleistocene Ecological Dynamics, Altered Trophic Strategies, and Shifting Human Perceptions*, 29 Historical Biology 895 [2017]). Sometimes domestic animals injure humans. For well over a century, New York allowed persons injured by a domestic animal to sue the animal's owner

- 1 -

under either an ordinary negligence theory or a strict liability theory (*see Dickson v McCoy*, 39 NY 400, 401 [1868]; *Benoit v Troy & Lansingburgh R.R. Co.*, 154 NY 223, 227 [1897]; *Hyland v Cobb*, 252 NY 325, 326-327 [1929]). The injured party had a choice. Under rules of ordinary negligence, the victim could seek to prove that the defendant had a duty, failed to use due care in discharging that duty, which proximately caused the victim's injury. Animal owners presumptively had a duty to control their animals, but others might also have such a duty when they "created the very risk . . . which operated to injure [the] plaintiff" (*Strunk v Zoltanski*, 62 NY2d 572, 575 [1984]; *see also Molloy v Starin*, 191 NY 21, 27 [1908] [common carrier liable for injuries caused by animals it was transporting]). Alternatively, if the owner knew that a domestic animal had vicious propensities, the victim could hold the owner strictly liable—that is, the owner of a vicious animal could not escape liability by showing that the owner had taken due care.

That dual approach made sense. Persons negligently injured by a factory machine, car, bicycle, horse or dog could recover without regard to whether the injury was caused by human, machine or animal, so long as duty, negligence and proximate cause were proved. However, if a domestic animal known to have vicious propensities hurt someone, the entire risk was placed on the owner, evidencing a policy against the harboring of vicious animals. That rule persisted until *Bard v Jahnke* (6 NY3d 592 [2006]), in which we held that owners of domestic animals could not be held liable for injuries caused by their animals unless the plaintiff could prove that the owner knew the animal had vicious propensities— that is, under a strict liability theory (*id.* at 599). *Bard*, however, did not disturb the viability of settled law allowing persons injured by animals to assert ordinary negligence claims

against persons other than the animal's owner (*see Benoit*, 154 NY at 228; *Molloy*, 191 NY at 27; *Strunk*, 62 NY2d at 575-576).

I concur with the majority's holding that Ms. Hewitt may proceed against Palmer Veterinary Clinic (Palmer) in negligence. I further agree with the majority's holding that this case does not implicate *Bard*'s rule (subjecting animal owners to strict liability) because Palmer was not the owner of Vanilla, the dog who injured Ms. Hewitt. Because the record presents disputed issues of fact, I further agree with the majority that neither party is entitled to summary judgment. I concur separately to express why prudence and longstanding precedent dictate that *Bard*'s strict liability rule—a rule that has rendered New York an outlier and confounded common sense and fairness in application—should not be extended to persons who are not the owner of the domestic animal causing injury.[1] I note that neither party has asked us to overturn *Bard*—understandably so because its rule does not apply to the facts of this case.

New York has long allowed negligence actions for injuries caused by domestic animals. In *Dickson v McCoy* (39 NY 400 [1868]), we affirmed a damage award for a child injured by a renegade horse. Judge Dwight held that even though "there is no proof

---

[1] As the Appellate Division observed in the instant case, *Bard*'s "strict liability rule has not escaped criticism" in our Court (*Hewitt v Palmer Veterinary Clinic, PC*, 167 AD3d 1120, 1121 [3d Dept 2018], citing *Doerr v Goldsmith*, 25 NY3d 1114, 1154-1155 [Fahey, J., dissenting]; *Bard*, 6 NY3d at 601-602 [Smith, J., dissenting]). *Bard* deviated from over a century of precedent and made New York the lone outlier among the 50 states in holding that negligent animal owners may not be held liable unless they know of an animal's vicious propensity; no other state immunizes owners from liability for their own negligence (*see Doerr*, 25 NY3d at 1149 [Fahey, J., dissenting] ["(A) review of the law of other jurisdictions identifies New York as a unique outlier in its rejection of the Restatement (Second) of Torts § 518"]).

in this case that this horse was vicious and accustomed to attack and injure mankind . . . I regard the allegation as unnecessary and the absence of proof on the point as not affecting the right to recover. . . . It is not necessary that a horse should be vicious to make the owner responsible for injury done by him through the owner's negligence" (*id.* at 401). Judge Grover believed that the trial court erred in refusing to charge the jury that there was no evidence that the horse had any vicious propensity, "which required the defendant to exert any greater care over him that prudent men should exercise, in general, over horses kept in the same or a similar locality," although he noted that "the jury may have based their verdict upon another ground" (*id.* at 402).[2] That other ground is negligence.

In *Benoit v Troy & Lansingburgh R.R. Co.* (154 NY 223 [1897]), a unanimous Court made clear that the common law allowed both a strict liability action when owners knew of their animals' vicious propensities <u>and</u> an action for negligence if those owners did not take reasonable measures to prevent their animals from causing injuries (*id.* at 225 [Andrews, Ch. J.] [ordering a new trial where "neither (cause of action) was sustained by evidence"]). Likewise, in *Hyland v Cobb* (252 NY 325 [1929]), we stated that "negligence by an owner, even without knowledge concerning a domestic animal's evil propensity, may create liability" (*id.* at 326-327). In addition, throughout the 20th century, New York courts have held that persons other than an animal's owner may be liable in negligence for injuries foreseeably caused by animals in their custody (*see Molloy v Starin*, 191 NY 21, 27 [1908]

---

[2] Judge Dwight and Judge Grover differed on whether the trial court properly denied the requested jury charge, but the court was unanimous that the judgment for the plaintiff should be affirmed. Together, their opinions hold that a person injured by a runaway horse may pursue a negligence action against the horse's owner.

[holding that a plaintiff could proceed under a negligence theory against a common carrier that transported but did not own the trained bears that injured the plaintiff]).  Notice of a domestic animal's vicious propensity may also render non-pet-owners who ordinarily have no duty, such as out-of-possession landlords, liable under a negligence standard (*see Strunk v Zoltanski*, 62 NY2d 572, 575-76 [1984] ["We do not intend to suggest that the landlord would be subject to the same strict liability to which a tenant as harborer of the dog would be subject . . . but landlords as others must exercise reasonable care not to expose third persons to an unreasonable risk of harm"]).

When *Bard* stated that an injured party could bring a claim in strict liability only against owners of domestic animals, it radically altered New York's settled law allowing negligence actions against animal owners.  It shifted the burden away from owners of domestic animals, who previously had to comply with a duty of care, to parties injured by those animals.  Though *Bard* correctly stated the rule, affirmed in *Collier v Zambito* (1 NY3d 444 [2004]), that an owner who knows or has reason to know of an animal's dangerous propensities faces strict liability, it introduced the novel holding that strict liability was the <u>only</u> type of liability that an owner of a domestic animal may face.  After *Bard*, unless owners had knowledge of their domestic animals' vicious propensities— established by prior acts, behaviors of the animal, or behaviors of its owner which lead to an inference of viciousness (*see Collier*, 1 NY3d at 447)—those owners were insulated from liability.  However, *Bard* neither altered nor established any rule as to the liability of non-owners responsible for injury-causing animals.

We have since applied *Bard* to pet owners, with confounding results, but have also recognized that *Bard*'s rule does not apply to immunize others from liability for their own negligence. Since *Bard*, we have declined to extend its strict liability rule to the claim that the owner of a farm animal negligently allowed the animal to stray, causing injury (*Hastings v Sauve*, 21 NY3d 122 [2013]), and the claim that a third-party defendant negligently failed to protect a child from injury by another party's dog (*Bernstein v Penny Whistle Toys, Inc.,* 10 NY3d 787 [2008]).[3] In *Hastings*, we distinguished *Bard* on the ground that unlike the animals in *Collier*, *Bard*, and *Bernstein*, the injury was not caused by any "aggressive or threatening behavior by" the wandering cow (*Hastings*, 21 NY3d at 125). Although in *Hastings* we rejected *Bard*'s strict liability rule because it "would immunize defendants who take little or no care to keep their livestock out of the roadway or off of other people's property" (*id.*), only two years later in *Doerr v Goldsmith* (25 NY3d 1114 [2015]) we applied the *Bard* rule to immunize negligent dog owners who deliberately commanded their large, well-trained docile dog to run across a roadway filled with runners, cyclists and rollerbladers, severely injuring a cyclist (*id.* at 1116). Thus, as the dissenters in *Bard* predicted, our application of *Bard*'s rule to animal owners has run "contrary to fairness and common sense," compelling its "ero[sion] by ad hoc exceptions" (*Bard*, 6

---

[3] In *Bernstein*, we held that the Appellate Division correctly disallowed the plaintiff's claim against the dog's owner and a toy store operated by the dog's owner "[s]ince there [was] no evidence . . . that the dog's owner had any knowledge of its vicious propensities" (*Bernstein*, 10 NY3d at 788). We provided a separate ground for dismissing the claim against the third party—the adult who had taken the infant plaintiff to the store and allowed the interaction with the dog—stating that "[p]laintiff's claims against third-party defendant were also properly dismissed, because there is no evidence that third-party defendant was negligent" (*id.*).

NY3d at 599 [Smith, J., dissenting]).  The inequity of the *Bard* rule in the context of pet-owner liability sharply cautions against extending that rule a whit.

Under our longstanding, settled precedent, undisturbed by *Bard*, a person injured by an animal may, under ordinary rules of negligence, sue a person other than the animal's owner.  Here, as the majority holds, Palmer unquestionably owes a duty of care to persons waiting in its clinic.  Whether injury to such persons caused by an animal patient is foreseeable, and whether a clinic has taken reasonable precautions to discharge its duty are questions of fact—not issues that we can say as a matter of law always exist or always are absent.  Because those factual questions are present and unresolved in the instant case, I agree with the majority that Supreme Court's grant of summary judgment to Palmer was erroneous.[4]  Viewing the facts in the light most favorable to Ms. Hewitt (*see Vega v Restani*

---

[4] I disagree with the majority's conclusion that Supreme Court did not err in striking those portions of Ms. Hewitt's supplemental bills of particulars alleging that Palmer was "negligent in not giving an effective pain medication and/or anesthesia to the dog," and "in not following the standard of care of dogs after surgery."  Palmer failed to make a showing of prejudice or surprise sufficient to overcome CPLR 3025 (b)'s command that leave to amend or supplement a pleading be freely granted.  For the most part, the allegations in Ms. Hewitt's supplemental bill of particulars merely amplified prior statements in Ms. Hewitt's complaint relating to Vanilla's condition before the incident—e.g., that the dog was in pain.  Two other factors strongly suggest that, at a minimum, Supreme Court should revisit the propriety of the motion to strike.  First, Supreme Court's decision was likely colored by the application of the *Bard* strict liability standard, which we unanimously reject.  The stricken portions do not bear on Palmer's knowledge of Vanilla's vicious propensities; striking them would have been appropriate were Ms. Hewitt limited to proceeding under a strict liability theory, but the stricken portions are directly related to the claim of negligence pleaded in Ms. Hewitt's original complaint.  We have repeatedly held that a court abuses its discretion in denying a party leave to amend pleadings absent prejudice or surprise resulting from the delay in seeking amendment, and we apply this favorable treatment "even if the amendment substantially alters the theory of recovery," not just when the amendment adds details consistent with the original theory of recovery (*Kimso Apts., LLC v Gandhi*, 24 NY3d 403, 411 [2014], quoting *Dittmar Explosives v A.*

*Const. Corp.*, 18 NY3d 499, 503 [2012]), the record presents multiple disputed issues of fact relating to, for example, whether the physical facility, practices on discharge, and restraint and supervision of Vanilla were reasonable. The parties dispute, for instance, the nature of Vanilla's behavior and handling during her medical procedure, and how Palmer's employee reported Vanilla's behavior to the dog's owner in the waiting room. It remains for the trier of fact to resolve the issue of whether the exercise of due care under the circumstances would have required any or all of the measures advocated by Ms. Hewitt's expert affiant, for example, delaying Vanilla's return to the waiting room or discharging her through a separate room, checking or adjusting Vanilla's collar, or otherwise preventing Vanilla from coming close to Ms. Hewitt's cat. Thus, neither Palmer nor Ms. Hewitt is entitled to summary judgment (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Order modified, without costs, by denying defendant's motion for summary judgment and, as so modified, affirmed. Opinion by Judge Stein. Chief Judge DiFiore and Judges Garcia and Feinman concur. Judge Wilson concurs in result in an opinion in which Judges Rivera and Fahey concur.

Decided October 22, 2020

---

*E. Ottaviano, Inc.*, 20 NY2d 498, 502-503 [1967]; *see also Fahey v County of Ontario*, 44 NY2d 934, 935 [1978]). Second, because Ms. Hewitt was not Vanilla's owner, her ability to learn about the nature of the procedure performed by Palmer and Vanilla's underlying condition(s) would not have been possible except through disclosure; thus, the supplementation of her bill of particulars following receipt of disclosure is not remarkable. Therefore, I would hold that denying Ms. Hewitt leave to amend her pleading and striking portions of her supplemental bill of particulars constituted an abuse of discretion. I agree with the majority's conclusion that Supreme Court properly declined to strike Palmer's apportionment defense.